# STATE OF MICHIGAN

# COURT OF APPEALS

LEANA M. COX, formerly known as LEANA M. TARAVELLA, Individually and as Next Friend of ANGELINA A. COX, a Minor,

      Plaintiff-Appellant,

v

ERIC J. HARTMAN, M.D., and BLUE WATER OBSTETRICS AND GYNECOLOGY PROFESSIONAL CORPORATION, doing business as BLUEWATER OB GYN, PC,

      Defendants,

and

TRACEY McGREGOR, R.N., and PORT HURON HOSPITAL,

      Defendants-Appellees.

FOR PUBLICATION
December 12, 2017
9:10 a.m.

Nos. 333849; 333994
St. Clair Circuit Court
LC No. 2014-002074-NH

Before: JANSEN, P.J., and CAVANAGH and CAMERON, JJ.

PER CURIAM.

These consolidated appeals arise from the same medical malpractice case. In Docket No. 333849, plaintiff, Leana M. Cox, formerly known as Leana M. Taravella (plaintiff), individually and as next friend of Angelina A. Cox (Angelina), a minor, appeals by leave granted[1] a June 6, 2016 opinion and order granting summary disposition in favor of defendants Tracey McGregor, R.N., and Port Huron Hospital pursuant to MCR 2.116(C)(10). In Docket No. 333994, plaintiff appeals by leave granted[2] a July 6, 2016 order denying plaintiff's motion for leave to name a new

---

[1] See *Cox v Hartman*, unpublished order of the Court of Appeals, entered January 20, 2017 (Docket No. 333849).

[2] See *Cox v Hartman*, unpublished order of the Court of Appeals, entered January 20, 2017 (Docket No. 333994).

nursing expert and to file an amended affidavit of merit. The appeals were consolidated. *Cox v Hartman*, unpublished order of the Court of Appeals, entered January 20, 2017 (Docket No. 333849); *Cox v Hartman*, unpublished order of the Court of Appeals, entered January 20, 2017 (Docket No. 333994). We affirm in both appeals.

This case arises out of alleged malpractice on the part of defendant Eric J. Hartman, M.D., and McGregor, a registered nurse, related to the birth of plaintiff's daughter, Angelina, on April 26, 2010, at Port Huron Hospital. Dr. Hartman delivered Angelina, and McGregor assisted in the delivery. Dr. Hartman was an owner and employee of defendant Blue Water Obstetrics and Gynecology Professional Corporation, doing business as Blue Water OB GYN, PC (Blue Water). McGregor was an employee of Port Huron Hospital. Plaintiff filed this medical malpractice action alleging negligence on the part of Dr. Hartman and vicarious liability of Blue Water for Dr. Hartman's negligence. Plaintiff also asserted a claim of professional negligence against McGregor. Plaintiff alleged that Port Huron Hospital was vicariously liable for the negligence of McGregor.[3]

After discovery, McGregor and Port Huron Hospital (hereinafter referred to collectively as defendants, given that Dr. Hartman and Blue Water are not involved in these appeals) filed a motion for summary disposition pursuant to MCR 2.116(C)(10). As relevant to these appeals, defendants argued that plaintiff's proposed nursing expert, Claudia A. Beckmann, was not qualified to offer standard of care testimony against McGregor pursuant to MCL 600.2169(1), and that defendants were thus entitled to summary disposition with respect to plaintiff's nursing malpractice claim. Defendants argued that, during the year immediately preceding the alleged malpractice, Beckmann did not devote the majority of her professional time to the active clinical practice or teaching of labor and delivery nursing, or even nursing more generally. Instead, Beckmann devoted the majority of her professional time to instructing students in a nurse practitioner graduate program at Rutgers University. In response to defendants' motion, plaintiff contended that Beckmann was qualified to testify as an expert witness on the standard of care for a registered nurse. Plaintiff argued that Beckmann devoted the majority of her professional time in the year preceding the alleged malpractice to instructing students in the nursing profession. In particular, plaintiff suggested that, by teaching nurse practitioner students, Beckmann was providing instruction in the same profession in which McGregor was licensed. The trial court ultimately agreed with defendants' argument and granted summary disposition to defendants on the nursing malpractice claim. Plaintiff then moved for leave to name a new nursing expert and to amend the affidavit of merit regarding the nursing malpractice claim; the trial court denied plaintiff's motion. These appeals followed.

Plaintiff argues on appeal that the trial court erred in determining that Beckmann was unqualified to testify as an expert witness concerning the standard of care applicable to McGregor and that the court erred in granting summary disposition to defendants. We disagree.

A trial court's ruling regarding the qualification of a proposed expert witness to testify is reviewed for an abuse of discretion. *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842

---

[3] Plaintiff asserted additional claims that are not relevant to these appeals.

-2-

(2006). An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. *Id*. This Court reviews de novo issues of statutory interpretation. *Sturgis Bank & Trust Co v Hillsdale Community Health Ctr*, 268 Mich App 484, 489; 708 NW2d 453 (2005).

> The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. The first step is to examine the plain language of the statute itself. The Legislature is presumed to have intended the meaning it plainly expressed. If the statutory language is clear and unambiguous, appellate courts presume that the Legislature intended the meaning plainly expressed, and further judicial construction is not permitted. [*McElhaney ex rel McElhaney v Harper-Hutzel Hosp*, 269 Mich App 488, 493; 711 NW2d 795 (2006) (citations omitted).]

"When a statute specifically defines a given term, that definition alone controls." *Haynes v Neshewat*, 477 Mich 29, 35; 729 NW2d 488 (2007). Court rules are interpreted in the same manner as statutes. *In re KH*, 469 Mich 621, 628; 677 NW2d 800 (2004). If the language of a court rule is unambiguous, it must be enforced as written. *Id*.

A trial court's decision on a motion for summary disposition is reviewed de novo. *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012).

> In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial. Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. [*Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 488; 892 NW2d 467 (2016) (quotation marks and citations omitted).]

"The plaintiff in a medical malpractice action bears the burden of proving: (1) the applicable standard of care, (2) breach of that standard by defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury. Failure to prove any one of these elements is fatal." *Cox ex rel Cox v Bd of Hosp Managers for City of Flint*, 467 Mich 1, 10; 651 NW2d 356 (2002) (quotation marks and citation omitted). Although nurses do not engage in the practice of medicine, the Legislature has made malpractice actions available against any licensed health care professional, including nurses. *Id*. at 19-20, citing MCL 600.5838a; see also *Sturgis*, 268 Mich App at 490. In general, expert testimony is necessary in a malpractice action to establish the applicable standard of care and the defendant's breach of that standard. *Elher v*

*Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016);[4] see also *Gay v Select Specialty Hosp*, 295 Mich App 284, 292; 813 NW2d 354 (2012) (noting that a plaintiff alleging nursing malpractice was required to present evidence concerning the applicable standard of care and that the plaintiff "could do so only through an expert's testimony."). "The proponent of the evidence has the burden of establishing its relevance and admissibility." *Elher*, 499 Mich at 22; see also *Gay*, 295 Mich App at 293 (explaining that "the party proposing to call an expert bears the burden to show that his or her expert meets [the requisite statutory] qualifications.").

MCL 600.2169(1) provides, in relevant part:

> (1) In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:
>
> * * *
>
> (b) Subject to subdivision (c) [which is not relevant here], during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:
>
> (*i*) The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, the active clinical practice of that specialty.
>
> (*ii*) The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.

A majority means more than 50 percent. *Kiefer v Markley*, 283 Mich App 555, 559; 769 NW2d 271 (2009). MCL 600.2169(1)(b) "makes no qualification of its applicability and, therefore, must be considered to apply generally to all malpractice actions, including those initiated against nonphysicians." *McElhaney*, 269 Mich App at 494. Therefore, plaintiff's proposed expert witness on the standard of care, Beckmann, must have devoted a majority of her professional time in the year immediately preceding April 26, 2010, the date of the alleged malpractice, to the

---

[4] An exception to the requirement of expert testimony "exists when the professional's breach of the standard of care is so obvious that it is within the common knowledge and experience of an ordinary layperson." *Elher*, 499 Mich at 21-22. Plaintiff does not argue that this exception applies, nor do we discern any basis to conclude that plaintiff's allegations of nursing malpractice fall within the common knowledge and experience of an ordinary layperson.

active clinical practice of, or the instruction of students in, the same health profession in which McGregor was licensed, i.e., that of a registered nurse.

Beckmann's deposition testimony establishes that she devoted a majority of her professional time in the year immediately preceding April 26, 2010, to the practice of, or the instruction of students in, the health profession of a nurse practitioner, which, as explained below, is different from the health profession of a registered nurse. According to Beckmann's curriculum vitae, she has, among other degrees, a post-master's certificate as a women's health nurse practitioner. Beckmann testified that, during the relevant time period,[5] she was the coordinator of the women's health nurse practitioner graduate program in the college of nursing at Rutgers University; in this position, she instructed nurse practitioner students. The nurse practitioner courses that she taught lasted the entire semester. Beckmann lectured nurse practitioner students in an academic setting and provided clinical training to nurse practitioner students. Beckmann also gave labor and delivery lectures in an undergraduate maternity nursing program, but this lecturing comprised a smaller percentage of her professional time than the time devoted to instructing nurse practitioner students; she spent only about six hours each semester lecturing undergraduate nursing students. Beckman spent a couple days each semester filling in clinically for faculty members who were teaching a course. The percentage of her professional time lecturing on labor and delivery to undergraduate nursing students and performing hands-on clinical work was less than 50%. It is clear from Beckmann's deposition testimony that, in the year immediately preceding April 26, 2010, she devoted a majority of her professional time to the practice of, or the instruction of students in, the health profession of a nurse practitioner.[6]

It is thus necessary to determine whether a nurse practitioner is the same health profession as a registered nurse. Our Supreme Court has looked to the definition of "health profession" contained in MCL 333.16105(2), a provision of the Public Health Code (PHC), when interpreting MCL 600.2169(1)(b). See *Bates v Gilbert*, 479 Mich 451, 459; 736 NW2d 566

---

[5] In his initial questioning of Beckmann, defense counsel mistakenly asked about the period of April 2008 to April 2009 rather than the period of April 2009 to April 2010, but defense counsel noted his mistake later in the deposition, and Beckmann then confirmed that all of her answers to the questions concerning how she spent her professional time during the period of April 2008 to April 2009 would be identical for the period of April 2009 to April 2010.

[6] In an affidavit appended to plaintiff's response to defendants' motion for summary disposition, Beckmann asserted in conclusory terms that she devoted more than 50% of her time in the year preceding April 26, 2010, to the instruction of students in the health profession of nursing. "However, a witness is bound by his or her deposition testimony, and that testimony cannot be contradicted by affidavit in an attempt to defeat a motion for summary disposition." *Casey v Auto Owners Ins Co,* 273 Mich App 388, 396; 729 NW2d 277 (2006). As discussed, Beckmann's deposition testimony established that she spent a majority of her professional time during the relevant time period practicing or instructing as a nurse practitioner, and as explained below, the health profession of nursing is different from the health profession of a nurse practitioner. Therefore, despite the conclusory assertions in Beckmann's affidavit, this Court is required to accept as binding Beckmann's deposition testimony. *Id*.

(2007). MCL 333.16105(2) defines a "health profession" as "a vocation, calling, occupation, or employment performed by an individual acting pursuant to a license *or registration* issued under this article." (Emphasis added.) The PHC defines a "registration" as "an authorization only for the use of a designated title which use would otherwise be prohibited under this article. *Registration includes specialty certification of a licensee* and a health profession specialty field license." MCL 333.16108(2) (emphasis added). Thus, the statutory definition of "health profession" indicates that a health profession may be determined by reference to a license *or* a registration, and a registration includes a specialty certification.

The PHC defines a "registered professional nurse" or "r.n." as "an individual who is licensed under this part to engage in the practice of nursing which scope of practice includes the teaching, direction, and supervision of less skilled personnel in the performance of delegated nursing activities." MCL 333.17201(e). The "practice of nursing" is defined as

> the systematic application of substantial specialized knowledge and skill, derived from the biological, physical, and behavioral sciences, to the care, treatment, counsel, and health teaching of individuals who are experiencing changes in the normal health processes or who require assistance in the maintenance of health and the prevention or management of illness, injury, or disability. [MCL 333.17201(c).]

A "certified nurse practitioner" is "an individual who is licensed as a registered professional nurse under part 172 who has been granted a specialty certification as a nurse practitioner by the Michigan board of nursing under section 17210." MCL 333.2701(c). See also *Cox*, 467 Mich at 10 n 10 (noting that a "nurse practitioner" "is a specialized term used in nursing that refers to a registered nurse who receives advanced training and is qualified to undertake some of the duties and responsibilities formerly assumed only by a physician."). MCL 333.17210(1) provides:

> (1) The Michigan board of nursing may grant a specialty certification to a registered professional nurse who has advanced training beyond that required for initial licensure, who has demonstrated competency through examination or other evaluative processes, and who practices in 1 of the following health profession specialty fields:
>
> (a) Nurse midwifery.
>
> (b) Nurse anesthetist.
>
> (c) *Nurse practitioner*.
>
> (d) Subject to subsection (2) [not relevant here], clinical nurse specialist. [Emphasis added.]

At the time of the alleged malpractice, McGregor was practicing the health profession of nursing pursuant to her license as a registered nurse. In the year immediately preceding the alleged malpractice, Beckmann devoted the majority of her professional time to instructing or practicing in the health profession of a nurse practitioner pursuant to her registration or specialty certification as a nurse practitioner. The health profession of nursing and the health profession of

-6-

a nurse practitioner are different, as reflected in the fact that the former is practiced pursuant to a license while the latter is practiced pursuant to a registration or specialty certification. Because Beckmann did not spend the majority of her professional time in the year preceding the alleged malpractice practicing or teaching the health profession of nursing, as opposed to the health profession of a nurse practitioner, she did not satisfy the statutory criteria to testify concerning the standard of care applicable to McGregor, a registered nurse. Beckmann's testimony was thus properly excluded.

We find support for the above reasoning in *Woodard*. In *Hamilton v Kulgowski*, which was a companion case to *Woodard*, the defendant physician was board certified in general internal medicine and specialized in general internal medicine. *Woodard*, 476 Mich at 556. The plaintiff's proposed expert witness was board certified in general internal medicine but devoted a majority of his professional time to the treatment of infectious diseases, which is a subspecialty of internal medicine. *Id*. The trial court granted a directed verdict in favor of the defendant physician, reasoning that the plaintiff's proposed expert witness was not qualified given that he specialized in infectious diseases and did not devote a majority of his professional time to practicing or teaching general internal medicine. *Id*. Our Supreme Court held that the trial court had properly granted a directed verdict to the defendant physician. *Id*. at 579. Our Supreme Court explained:

> The defendant physician specializes in general internal medicine and was practicing general internal medicine at the time of the alleged malpractice. During the year immediately preceding the alleged malpractice, plaintiff's proposed expert witness did not devote a majority of his time to practicing or teaching general internal medicine. Instead, he devoted a majority of his professional time to treating infectious diseases. As he himself acknowledged, he is "not sure what the average internist sees day in and day out." Therefore, plaintiff's proposed expert witness does not satisfy the same practice/instruction requirement of § 2169(1)(b).
>
> For this reason, the trial court did not abuse its discretion in concluding that plaintiff's proposed expert witness is not qualified to testify regarding the appropriate standard of practice or care under § 2169(1). Because plaintiff failed to present an expert qualified under § 2169(1) to testify with regard to the appropriate standard of practice or care, the trial court properly granted a directed verdict in favor of defendant. [*Id*. at 578.]

We find this reasoning in *Woodard* applicable in the analogous context of nursing and supportive of our analysis. Given that Beckmann did not spend a majority of her professional time in the relevant time period practicing or teaching the health profession of nursing, she was not qualified to testify regarding the appropriate standard of care under MCL 600.2169(1)(b).

"On a motion for summary disposition, the existence of a disputed fact may only be established by admissible evidence." *McElhaney*, 269 Mich App at 497. Beckmann's testimony was not admissible to establish the standard of care applicable to McGregor, plaintiff presented no other expert witnesses concerning the standard of care applicable to McGregor, and plaintiff thus failed to establish a genuine issue of material fact regarding the applicable standard of care

and the breach of that standard. Accordingly, the trial court properly granted summary disposition to defendants. See *id*. at 497-498 (where the testimony of the plaintiff's proposed expert witness was not admissible under MCL 600.2169(1)(b) to establish the standard of care, the defendant was entitled to summary disposition because the plaintiff failed to establish a genuine issue of material fact regarding the standard of care and the breach of that standard).

Plaintiff argues that, in its opinion and order granting summary disposition to defendants, the trial court violated MCR 7.215(C)(1) by citing and relying on an unpublished opinion for a proposition of law for which there was published authority, i.e., *Sturgis* and *McElhaney*. We disagree. MCR 7.215(C)(1) provides:

> An unpublished opinion is not precedentially binding under the rule of stare decisis. Unpublished opinions should not be cited for propositions of law for which there is published authority. If a party cites an unpublished opinion, the party shall explain the reason for citing it and how it is relevant to the issues presented. A party who cites an unpublished opinion must provide a copy of the opinion to the court and to opposing parties with the brief or other paper in which the citation appears.

Although MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis, a court may nonetheless consider such opinions for their instructive or persuasive value. *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010). MCR 7.215(C)(1) requires a party to explain the reason for citing an unpublished opinion and how it is relevant to the issues presented, but the court rule does not impose this requirement on a trial court. In any event, the trial court more than adequately explained why it was citing an unpublished opinion. The trial court stated: "Although unpublished, because of the nearly identical factual situation; the straightforward, logical analysis that takes every word of MCL 600.2169(1)(b) into account; and the reliance on a rational interpretation of binding precedent, this Court finds the analysis, reasoning, and holding in [the unpublished opinion cited by the trial court] to be extremely persuasive."

Moreover, contrary to plaintiff's argument, there is no published authority addressing the precise issue presented in this case. Plaintiff's reliance on *Sturgis* and *McElhaney* is misplaced.

In *Sturgis*, 268 Mich App at 486-487, the plaintiff sued the defendant-hospital for the alleged negligence of its nursing staff. Pursuant to MCL 600.2912d(1), the plaintiff attached to its complaint affidavits of merit from a registered nurse and a nurse practitioner. *Id*. at 487. The defendant agreed that the nurse and the nurse practitioner who signed the affidavits of merit were employed in the same health profession as the nurses who allegedly committed the malpractice but argued that the proposed experts were not qualified to aver with respect to the proximate cause of the injury. *Id*. This Court held that the affidavits were sufficient. *Id*. at 489. This Court stated that MCL 600.2169(1) "only requires that the affiants, the nurse and the nurse practitioner, practice or teach in the same health profession as those who committed the alleged malpractice, i.e., defendant's nurses. Either the nurse's affidavit or the nurse practitioner's affidavit sufficed." *Id*. at 492. This Court found support for its decision in *Grossman v Brown*, 470 Mich 593; 685 NW2d 198 (2004), in which "our Supreme Court noted the need for a plaintiff in a medical malpractice action to obtain a medical expert at two different stages of the

litigation, i.e., at the time the complaint is filed and at the time of trial [and] recognized the differing features of [MCL 600.2912d(1) (governing affidavits of merit)] and [MCL 600.2169 (governing testimony at trial).]" *Sturgis*, 268 Mich App at 493-494. At the affidavit of merit stage, the plaintiff's attorney needs only to hold a *reasonable belief* that the expert signing the affidavit of merit satisfies the requirements for an expert witness under MCL 600.2169. See *Sturgis*, 268 Mich App at 490-491, citing MCL 600.2912d(1). The *Sturgis* Court quoted the following language from *Grossman*:

> The Legislature's rationale for this disparity is, without doubt, traceable to the fact that until a civil action is underway, no discovery is available. See MCR 2.302(A)(1). Thus, the Legislature apparently chose to recognize that at the first stage, in which the lawsuit is about to be filed, the plaintiff's attorney only has available publicly accessible resources to determine the defendant's board certifications and specialization. At this stage, the plaintiff's attorney need only have a *reasonable belief* that the expert satisfies the requirements of MCL 600.2169. See MCL 600.2912d(1). However, by the time the plaintiff's expert witness testifies at trial, the plaintiff's attorney has had the benefit of discovery to better ascertain the qualifications of the defendant's physician, and, thus, the plaintiff's attorney's reasonable belief regarding the requirements of MCL 600.2169 does not control whether the expert may testify. [*Sturgis*, 268 Mich App at 494, quoting *Grossman*, 470 Mich at 599.]

The *Sturgis* Court also quoted language from *Grossman* noting that what satisfies the statutory standard at the affidavit of merit stage might not satisfy the requirements for admission of expert testimony at trial. *Sturgis*, 268 Mich App at 494, citing *Grossman*, 470 Mich at 600. See also *Jones v Botsford Continuing Care Corp*, 310 Mich App 192, 199-201; 871 NW2d 15 (2015) (discussing the differing statutory standards governing, respectively, the admission of an expert's standard of care testimony at trial and the adequacy of an expert's affidavit of merit).

*Sturgis* is therefore distinguishable from the present case in numerous respects. The dispute in *Sturgis* concerned whether the proposed experts were qualified *at the affidavit of merit stage* to aver *with respect to proximate cause*, whereas the present case concerns the admissibility of the proposed expert's testimony *at trial* concerning the *standard of care*. As explained above, the standard at the affidavit of merit stage is more lenient than the standard for admissibility of expert testimony at trial. Further, the defendant in *Sturgis* conceded that the nurse and the nurse practitioner who signed the affidavits of merit were employed in the same health profession as the nurses who allegedly committed the malpractice, and this Court had no occasion to examine the validity of that concession. Most importantly, plaintiff fails to recognize that it is not the mere fact that Beckmann is a nurse practitioner that precludes her testimony in this case; it is the fact that she did not devote a majority of her professional time to the practice or instruction of the health profession of nursing that renders her unqualified. Given that a nurse practitioner is licensed as a registered nurse but possesses an additional specialty certification as a nurse practitioner, it is possible that a nurse practitioner could qualify to testify regarding the standard of care against a registered nurse *if* the nurse practitioner devoted a majority of her professional time to instructing or practicing in the health profession of nursing during the relevant time period. Therefore, plaintiff's argument that *Sturgis* controls this case is unavailing.

-9-

Plaintiff's reliance on *McElhaney* is likewise misplaced. In *McElhaney*, 269 Mich App at 496, this Court held that the plaintiff's proposed expert witnesses, who were obstetricians and gynecologists, were not qualified under MCL 600.2169(1)(b) to testify regarding the standard of care applicable to a nurse midwife. This Court concluded that "because nurse midwives are separately licensed professionals who practice nursing with specialty certification in the practice of nurse midwifery, obstetricians/gynecologists may not testify about their standard of practice or care." *Id*. at 497. We find nothing in *McElhaney* that addresses the precise issue presented here, i.e., whether a nurse practitioner who spends the majority of her time practicing or teaching pursuant to her specialty certification as a nurse practitioner is engaged in the same health profession as a registered nurse who practices pursuant to her license as a registered nurse.

Further, plaintiff's citation of a Georgia case, *Dempsey v Gwinnett Hosp Sys, Inc*, 330 Ga App 469; 765 SE2d 525 (2014), is unavailing. This Court is not bound by the decisions of the courts of other states, although such decisions may be considered as persuasive. *K & K Constr, Inc v Dep't of Environmental Quality*, 267 Mich App 523, 559 n 38; 705 NW2d 365 (2005). In *Dempsey*, a Georgia appellate court determined that a nurse midwife was qualified under Georgia statutes to testify as an expert against registered nurses because the nurse midwife was a member of the same profession as the registered nurses. *Dempsey*, 330 Ga App at 469-474. Because the present case turns on the interpretation of Michigan statutes rather than the Georgia statutes at issue in *Dempsey*, we do not find *Dempsey* to be persuasive.

We also note that in *Jones*, 310 Mich App at 203-204, this Court stated that the plaintiff's counsel could have reasonably believed at the affidavit of merit stage that a registered nurse was qualified to offer standard of care testimony against a licensed practical nurse, which this Court noted is a health profession subfield of the practice of nursing. This Court declined to decide, however, whether a registered nurse could ultimately offer standard of care testimony against a licensed practical nurse at trial. *Id*. at 203. Moreover, this Court emphasized that neither a registered nurse nor a licensed practical nurse has any specialty training. *Id*. at 205. This Court explained: "Unlike a nurse midwife or a nurse practitioner, neither [a registered nurse] nor [a licensed practical nurse] is within a 'health profession specialty field.' MCL 333.16105(3)." *Id*. at 205 n 5. Hence, the reasoning in *Jones* is not inconsistent with our analysis.

Plaintiff next argues that the trial court abused its discretion in denying plaintiff's motion to add an expert witness. We disagree.

This Court reviews for an abuse of discretion a trial court's decision whether to allow a party to add an expert witness. *Tisbury v Armstrong*, 194 Mich App 19, 20; 486 NW2d 51 (1992). An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. *Woodard*, 476 Mich at 557.

Plaintiff contends that the trial court erred in concluding that plaintiff's motion to add an expert witness was untimely. We disagree. Plaintiff did not move to add a new expert until June 10, 2016, which was four days after the trial court had entered its June 6, 2016 order granting summary disposition in favor of defendants. In an analogous context, this Court has held that a motion to amend a complaint was untimely where the motion was filed after summary disposition had already been granted to the defendant. See *Wormsbacher v Phillip R Seaver Title Co, Inc*, 284 Mich App 1, 9-10; 772 NW2d 827 (2009), citing *Amburgey v Sauder*, 238 Mich

App 228, 247-248; 605 NW2d 84 (1999). In this case, plaintiff could have sought to add a new expert witness much earlier because plaintiff was on notice that there was at least a question concerning Beckmann's qualification to testify. At Beckmann's deposition in August 2015, it became clear that Beckmann devoted a majority of her professional time in the year preceding the alleged malpractice to instruction or practice as a nurse practitioner rather than a registered nurse. In November 2015, defendants moved for summary disposition on the basis of Beckmann's lack of qualification to testify; by this point, plaintiff was plainly on notice that Beckmann's qualification as an expert witness was in question. Although the trial court initially ruled in plaintiff's favor on the summary disposition issue on February 2, 2016, the trial court granted reconsideration of its decision on March 31, 2016, allowing the parties to file supplemental briefs on the issue. Hence, plaintiff's suggestion that she could not have known that she needed to obtain an expert other than Beckmann until the trial court actually granted summary disposition on June 6, 2016, lacks merit. In opposing defendant's motion for summary disposition, plaintiff chose to rely entirely on Beckmann as an expert rather than seek to add another expert at that time; this was plaintiff's choice. The trial court then granted summary disposition to defendants because Beckmann was unqualified and plaintiff had presented no other expert to testify concerning the standard of care. The trial court did not err in concluding that plaintiff's motion was untimely.

Plaintiff argues that MCR 2.604(A) granted the trial court authority to revise the order granting summary disposition because a final judgment had not yet been entered (given that plaintiff still had claims pending against Dr. Hartman and Blue Water). MCR 2.604(A) states:

> Except as provided in subrule (B) [not applicable here], an order or other form of decision adjudicating fewer than all the claims, or the rights and liabilities of fewer than all the parties, does not terminate the action as to any of the claims or parties, and the order is subject to revision before entry of final judgment adjudicating all the claims and the rights and liabilities of all the parties. . . .

Plaintiff's argument lacks merit. The trial court did not state that it lacked authority to revise the order granting summary disposition to defendants. Instead, the trial court ruled that plaintiff's motion to add a new expert witness was untimely. To the extent that plaintiff fails to address the basis of the trial court's decision, plaintiff has abandoned her argument on this issue. See *AK Steel Holding Corp v Dep't of Treasury*, 314 Mich App 453, 474 n 10; 887 NW2d 209 (2016). MCR 2.604(A) does not require a trial court to consider an untimely motion. Also, plaintiff's motion sought to add a new expert witness, not to revise an order (although plaintiff presumably would have sought to set aside the order granting summary disposition if her motion to add a new expert witness had been granted). Plaintiff's reliance on MCR 2.604(A) is thus misplaced.

In any event, the trial court's decision was not premised solely on the untimeliness of the motion. After concluding that the motion was untimely, the trial court went on to state that even if the motion was properly before the court, the court would deny the motion given the prejudice to defendants. The trial court's decision fell within the range of principled outcomes. MCR 2.401(I)(1) provides that parties must file and serve witness lists no later than the time directed by the trial court. "The court may order that any witness not listed in accordance with this rule will be prohibited from testifying at trial except upon good cause shown." MCR 2.401(I)(2). The trial court's scheduling order required plaintiff to file and serve her witness lists by March 6,

2015. Hence, plaintiff's June 10, 2016 motion to add a new expert witness was filed more than one year and three months after the due date for filing and serving witness lists. It was thus plaintiff's burden to demonstrate good cause for the late addition of a new expert witness. The denial of a late motion to add a witness "is proper where the movant fails to provide an adequate explanation and show that diligent efforts were made to secure the presence of the witness." *Tisbury*, 194 Mich App at 20. A court should consider whether prejudice would result from granting a motion to add an expert witness. *Id*. at 21; *Levinson v Sklar*, 181 Mich App 693, 698-699; 449 NW2d 682 (1989).

As the trial court noted, plaintiff did not act diligently in pursing this case. At one point in the case, the trial court had to enter an order requiring plaintiff's counsel to specify in writing whether plaintiff would utilize various listed experts, including Beckmann, and compelling plaintiff's counsel to cooperate in scheduling the depositions of expert witnesses. Plaintiff notes that she did not file a written response opposing defendants' motion to compel, that Beckmann's deposition was scheduled by the parties before the court entered its order on the motion to compel, and that the order granting the motion to compel resulted from an agreement of the parties, but it appears this agreement was reached only after the parties' attorneys came to court for the hearing on the motion to compel.

Further, as discussed earlier, plaintiff's motion to add an expert witness was not filed until after the trial court had already granted summary disposition to defendants, even though plaintiff's counsel was on notice much earlier that Beckmann's qualification as an expert witness was at the very least in dispute. Even on the date of the hearing on plaintiff's motion to add a new expert witness, plaintiff's counsel still had not retained a new expert witness and had not provided any notice of the identity of any new expert witness to defendants, despite the fact that trial was scheduled to occur on September 7, 2016, which was less than three months away at the time of the motion hearing. The case had been pending for one year and 10 months by the time plaintiff filed the motion to add a new expert witness. Given the lateness of plaintiff's motion, the trial court reasonably concluded that defendants would be prejudiced in preparing for trial if the motion was granted. Overall, the trial court's denial of plaintiff's motion to add a new expert witness fell within the range of principled outcomes.

Plaintiff also contends that she should be permitted to file an "amended" affidavit of merit signed by a new expert witness pursuant to MCR 2.112(L)(2)(b), which provides:

> [A]ll challenges to an affidavit of merit or affidavit of meritorious defense, including challenges to the qualifications of the signer, must be made by motion, filed pursuant to MCR 2.119, within 63 days of service of the affidavit on the opposing party. An affidavit of merit or meritorious defense may be amended in accordance with the terms and conditions set forth in MCR 2.118 and MCL 600.2301.

Plaintiff fails to explain how an affidavit of merit signed by a new expert witness, i.e., a different affiant than Beckmann, who had signed the prior affidavit of merit, would constitute an "amended" affidavit of merit under MCR 2.112(L)(2)(b). See *Jones*, 310 Mich App at 224 (DONOFRIO, J., concurring in part and dissenting in part) (questioning "whether plaintiff's current desire to *substitute* the prior affidavits of merit with entirely new ones signed by different

-12-

affiants qualifies as *amending* the prior affidavits.").  In any event, summary disposition was not granted to defendants on the basis of any deficiencies in the affidavit of merit; instead, summary disposition was granted because plaintiff failed to present a standard of care expert who was qualified to testify at trial.  Therefore, amendment of the affidavit of merit would not affect or undermine the rationale or basis on which summary disposition was granted to defendants, nor would it alter the fact that, for the reasons explained above, the trial court's denial of plaintiff's motion to add a new expert witness to testify at trial fell within the range of principled outcomes.

Affirmed.


/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Thomas C. Cameron