*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF AARON KELLY MILLER, by JOAN
MILLER, Personal Representative,

        Plaintiff-Appellant,

v

ANGELS' PLACE, INC and CAROL CARAMIA,

        Defendants-Appellees.

FOR PUBLICATION
October 22, 2020
9:10 a.m.

No. 348940
Oakland Circuit Court
LC No. 2018-165847-NI

Before: GADOLA, P.J., and RONAYNE KRAUSE and O'BRIEN, JJ.

GADOLA, P.J.

Plaintiff Joan Miller, as personal representative of the Estate of Aaron Kelly Miller, appeals as of right the order of the trial court granting defendants, Angels' Place, Inc (Angels' Place) and Carol Caramia, summary disposition under MCR 2.116(C)(7) of plaintiff's claims of negligence. Plaintiff challenges the trial court's ruling that her claims against defendants are subject to dismissal because they sound in medical malpractice rather than ordinary negligence. Because we conclude that defendants are not entities or persons capable of committing medical malpractice, we reverse the trial court's grant of summary disposition and remand for proceedings consistent with this opinion.

## I. FACTS

This case arises from the death of Aaron Kelly Miller (Miller). Miller was diagnosed with mental and physical disabilities and required support to live in the community. At the time of his death, Miller was a resident at Joliat Home, a licensed adult foster care small group home, with a special certification for providing services to the developmentally disabled. Joliat Home is owned and operated by defendant Angels' Place.

At Joliat Home, Miller was to be continually monitored for safety. Particularly because Miller had the tendency to eat too quickly and put large amounts of food into his mouth, his access to food was regulated and he was to be visually monitored when he ate. On December 30, 2017, Miller was at the home, and defendant Carol Caramia, an employee of Angels' Place, was the sole caregiver on duty. Miller began to have difficulty breathing and collapsed. Caramia telephoned

911.  Emergency personnel arrived shortly thereafter and found that Miller did not have a pulse and also discovered food in Miller's mouth.  They performed CPR and artificial breathing until Miller regained his pulse, then transported him to the hospital.  Miller died the next day from asphyxia and airway obstruction as a result of choking on the food.

Plaintiff initiated this case in the trial court, alleging ordinary negligence against Angels' Place and Caramia, and also alleging breach of contract against Angels' Place.  After discovery, defendants moved for summary disposition under MCR 2.116(C)(7) and (8), asserting that plaintiff's claims did not arise under ordinary negligence theories and instead were medical malpractice claims.  Defendants argued that Angels' Place was an entity capable of medical malpractice because it is a licensed health facility under MCL 600.5838a(1), and that Caramia was capable of medical malpractice as its agent.  Defendants also asserted that plaintiff's claims involved questions of medical judgment, and that a lay juror would require testimony from a medical expert to understand whether defendants' actions and decisions had been reasonable or in breach of a duty.

The trial court granted defendants' motion for summary disposition under MCR 2.116(C)(7).  The trial court found that Angels' Place was properly classified as a licensed health facility or agency because it is an "intermediate care facility," MCL 333.20108(1), and, thus, is an entity capable of medical malpractice under MCL 600.5838a, as was Caramia as an employee and agent of Angels' Place.  The trial court also found that plaintiff's claims arose out of a contract with defendants to provide Miller with health care services and therefore involved a professional relationship entangled with questions of medical judgment, and that the claims would require the testimony of medical experts.  Because the claims had not been alleged as medical malpractice claims, the trial court granted defendants summary disposition under MCR 2.116(C)(7), but permitted plaintiff an opportunity to file a motion to amend her complaint under MCR 2.118.  The trial court thereafter denied plaintiff's motion for reconsideration.  Plaintiff now appeals.

## II.  DISCUSSION

Plaintiff contends that the trial court erred by granting defendants summary disposition under MCR 2.116(C)(7), holding that her claims sounded in medical malpractice and not ordinary negligence as alleged in her complaint.  We agree.

Whether a plaintiff's claim sounds in ordinary negligence or in medical malpractice is a question of law that this Court reviews de novo. *Trowell v Providence Hosp & Med Ctrs, Inc*, 502 Mich 509, 517; 918 NW2d 645 (2018).  We also review de novo the application of statutes, *Cox v Hartman*, 322 Mich App 292, 298; 911 NW2d 219 (2017), and a trial court's decision to grant or deny summary disposition. *Dawoud v State Farm Mut Auto Ins Co*, 317 Mich App 517, 520; 895 NW2d 188 (2016).

The determination whether the nature of a claim is ordinary negligence or medical malpractice is properly made under MCR. 2.116(C)(7). *Bryant v Oakpointe Villa Nursing Ctr, Inc*, 471 Mich 411, 419; 684 NW2d 864 (2004).  In considering a motion under MCR 2.116(C)(7), we accept the contents of the complaint as true unless contradicted by the documentation submitted by the moving party, and consider any affidavits, depositions, admissions, or other documentary evidence submitted. *McLean v McElhaney*, 289 Mich App 592, 597; 798 NW2d 29 (2010).  If no

facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, whether summary disposition is proper is a question of law for the Court. See *id*.

The first issue to be determined in any purported medical malpractice case is whether the case is brought against an entity or a person capable of medical malpractice. *Bryant*, 471 Mich at 420. "A malpractice action cannot accrue against someone who, or something that, is incapable of malpractice." *Adkins v Annapolis Hosp*, 420 Mich 87, 95; 360 NW2d 150 (1984). Recently, this Court discussed who can be sued for malpractice:

> The scope of who can be sued for medical malpractice has expanded over the years. Initially, "[u]nder the common law, only physicians and surgeons were potentially liable for medical malpractice." *Kuznar v Raksha Corp*, 481 Mich 169, 177; 750 NW2d 121 (2008). With MCL 600.5838a, the Legislature expanded the scope of who may be subject to a medical-malpractice action to include other professionals and entities. *Bryant*, 471 Mich at 420; 684 NW2d 864 (citing *Adkins*, 420 Mich at 94-95; 360 NW2d 150). Specifically, the Legislature provided for medical-malpractice claims to be brought against "a person or entity who is or who holds himself or herself out to be a licensed health care professional, licensed health facility or agency, or an employee or agent of a licensed health facility or agency." MCL 600.5838a(1). For these purposes, a "licensed health facility or agency" means "a health facility or agency licensed under article 17 of the public health code," and a "licensed health care professional" means "an individual licensed or registered under article 15 of the public health code." MCL 600.5838a(1)(a), (b). [*LaFave v Alliance Healthcare Services, Inc*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 345986); slip op at 2.]

Thus, MCL 600.5838a, though an accrual statute that sets forth when a medical malpractice action accrues, also expands the list of those who are subject to suit for medical malpractice to include a licensed health facility or agency. *Bryant*, 471 Mich at 420. That statute provides, in relevant part:

> (1) For purposes of this act, a claim based on the medical malpractice of a person or entity who is or who holds himself or herself out to be a licensed health care professional, licensed health facility or agency, or an employee or agent of a licensed health facility or agency who is engaging in or otherwise assisting in medical care and treatment, whether or not the licensed health care professional, licensed health facility or agency, or their employee or agent is engaged in the practice of the health profession in a sole proprietorship, partnership, professional corporation, or other business entity, accrues at the time of the act or omission that is the basis for the claim of medical malpractice, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim. As used in this subsection:
>
> > (a) "Licensed health facility or agency" means a health facility or agency licensed under article 17 of the public health code, Act No. 368 of the Public Acts of 1978, being sections 333.20101 to 333.22260 of the Michigan Compiled Laws. [MCL 600.5838a(1).]

-3-

MCL 600.5838a(1)(a) thus defines licensed health facilities and agencies as "those licensed under article 17 of the Public Health Code," *Kuznar v Raksha Corp*, 481 Mich 169, 177-178; 750 NW2d 121 (2008), specifically, in MCL 333.20101 to 333.22260. Article 17 thereby "provides its own definition of what is a health facility or agency in the form of a list." *Kuznar*, 481 Mich at 178. That "list," found at, MCL 333.20106(1), see *id*. at 178 n 23, specifically defines a "health facility or agency" as follows:

(1) "Health facility or agency," except as provided in section 20115 [MCL 333.20115], means:

(a) An ambulance operation, aircraft transport operation, nontransport prehospital life support operation, or medical first response service.

(b) A county medical care facility.

(c) A freestanding surgical outpatient facility.

(d) A health maintenance organization.

(e) A home for the aged.

(f) A hospital.

(g) A nursing home.

(h) A hospice.

(i) A hospice residence.

(j) A facility or agency listed in subdivisions (a) to (g) located in a university, college, or other educational institution.

The list set forth in MCL 333.20106 defines "health facility or agency," except as provided in MCL 333.20115. That section provides for the promulgation of administrative rules to "further define" the list set forth in MCL 333.20106. *Kuznar*, 481 Mich at 178. MCL 333.20115 provides, in relevant part:

(1) The department may promulgate rules to further define the term "health facility or agency" and the definition of a health facility or agency listed in section 20106 [MCL 333.20106] as required to implement this article. The department may define a specific organization as a health facility or agency for the sole purpose of certification authorized under this section. *For purpose of certification only*, an organization defined in section 20106(5), *20108(1)*, or 20109(4) [MCL 333.20106(5), *MCL 333.20108(1)*, or MCL 333.20109(4)] *is considered a health facility or agency*. . . . [Emphasis added.]

In this case, the parties do not dispute that Angels' Place is a licensed adult foster care small group home. The parties also do not dispute that Angels' Place has a certification[1] as a provider of care for the developmentally disabled. However, the parties also do not dispute that Angels' Place, as an adult foster care small group home, is not *licensed* as one of the entities listed under MCL 333.20106(1), nor is it *licensed* under any administrative expansion of the list under MCL 333.20115. See *Kuznar*, 481 Mich at 178.

Moreover, the parties do not dispute that Angels' Place is not licensed under the Public Health Code. Rather, adult foster care small group homes are licensed under the Adult Foster Care Facility Licensing Act (AFCFLA), MCL 400.701 *et seq*. *Life Skills Village, PLLC v Nationwide Mut Fire Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 345237); slip op at 3. Because Angels' Place is licensed under the AFCFLA and not under article 17 of the Public Health Code, Angels' Place cannot be a licensed health facility or agency within the meaning of MCL 600.5838a(1), regardless of whether it also has certification as a provider of care for the developmentally disabled. As a result, Angels' Place and its employee, Caramia, cannot be liable for medical malpractice in that capacity. See *Sabbagh v Hamilton Psychological Servs, Inc, PLC*, 329 Mich App 324, 337; 941 NW2d 685 (2019).

The trial court, however, held that Angels' Place was an entity capable of medical malpractice because, although Angels' Place was not one of the entities specified in the list provided by MCL 333.20106(1), Angels' Place nonetheless is a licensed health facility or agency within the meaning of MCL 600.5838a(1) because the trial court found it to be an "intermediate care facility" under MCL 333.20108(1). That section provides:

> (1) "Intermediate care facility" means a hospital long-term care unit, nursing home, county medical care facility, or other nursing care facility, or distinct part thereof, certified by the department to provide intermediate care or basic care that is less than skilled nursing care but more than room and board. [MCL 333.20108(1).]

The trial court concluded that Angels' Place is an intermediate care facility under MCL 333.20108(1) because it is certified to provide care to the developmentally disabled, which the trial court determined was "intermediate care or basic care that is less than skilled nursing care but

---

[1] Under MCL 333.20131, the department of licensing and regulatory affairs is charged with the certification process; that section states that the department "shall establish a comprehensive system of licensure and certification for health facilities or agencies. . . ." MCL 333.20131(2) provides that the department "may certify a health facility or agency, or part thereof, defined in . . . [MCL 333.20106] or under . . . [MCL 333.20115] when certification is required by state or federal law, rule, or regulation." "Certification" is defined in MCL 333.20104 as "the issuance of a document by the department to a health facility or agency attesting to the fact that the health facility or agency . . . complies with applicable statutory and regulatory requirements and standards [and] . . . is eligible to participate as a provider of care and services in a specific federal or state health program." By contrast, MCL 333.20108(2) defines "license" as "an authorization, annual or as otherwise specified, granted by the department and evidenced by a certificate of licensure or permit granting permission to a person to establish or maintain and operate, or both, a health facility or agency. . . ."

more than room and board." The trial court reasoned that Angels' Place, as an intermediate care facility under MCL 333.20108(1), becomes a "health facility or agency" under MCL 333.20115. However, MCL 333.20115(1) provides that "[t]he department may define a specific organization as a health facility or agency *for the sole purpose of certification authorized under this section. For purpose of certification only*, an organization defined in [MCL 333.20106(5), *MCL 333.20108(1)*, or MCL 333.20109(4)] is considered a health facility or agency" (Emphasis added). Additionally, MCL 333.20108(1) also references only certification, not licensure. Consequently, both statutory sections establish that being an "intermediate care facility" establishes only that it is "certified" under the Public Health Code, not that it is "licensed." The plain language of MCL 600.5838a(1)(a) specifically requires licensure.

Further, there is no demonstration that Angels' Place meets the definition of "intermediate care facility," even for purposes of certification. MCL 333.20108(1) requires that an entity be "a hospital long-term care unit, nursing home, county medical care facility, or other nursing care facility, or distinct part thereof," to be classified as an intermediate care facility "certified by the department to provide intermediate care. . . ." In finding that Angels' Place was a licensed health facility or agency, the trial court relied principally on the second half of MCL 333.20108(1), concluding that Angels' Place is an intermediate care facility because it has been "certified by the department to provide intermediate or basic care that is less than skilled nursing care but more than room and board." The record, however, does not demonstrate that Angels' Place is "a hospital long-term care unit, nursing home, county medical care facility, or other nursing care facility, or distinct part thereof," which is a prerequisite to finding that Angels' Place meets the definition found in MCL 333.20108(1). Nor does the record support that Angels' Place was in fact certified in this manner. Moreover, as discussed, concluding that Angels' Place has been "certified by the department to provide intermediate or basic care that is less than skilled nursing care but more than room and board," despite the lack of evidentiary support for this proposition, would not transform Angels' Place into an entity licensed under article 17 of the Public Health Code when it is instead licensed under the AFCFLA.

Our Legislature expressly identified the category of persons and entities that can be subjected to a medical malpractice lawsuit, and this Court will not expand that category. *LaFave*, ___ Mich App at ___; slip op at 4. MCL 600.5838a extends the category of those who are subject to suit for medical malpractice to include a licensed health facility or agency. *Bryant*, 471 Mich at 420-421. MCL 600.5838a(1)(a) defines licensed health facilities and agencies as "those licensed under article 17 of the Public Health Code," *Kuznar*, 481 Mich at 177-178, specifically MCL 333.20101 to 333.22260. Because Angels' Place is not licensed under article 17 of the Public Health Code, it is not a licensed health facility or agency under MCL 600.5838a. The trial court therefore erred in finding that Angels' Place is a health facility or agency licensed under article 17 of the Public Health Code and an entity capable of medical malpractice, and that Caramia was an agent of Angels' Place similarly capably of medical malpractice.

Plaintiff also contends that the trial court erred when it found that her claims raised questions requiring evidence of medical judgment or knowledge that went beyond a juror's common knowledge and experience, and therefore sounded in medical malpractice rather than ordinary negligence. We need not address this additional inquiry, however. Before a claim can be found to be one of medical malpractice, the defendant must be a person or entity capable of committing malpractice. *LaFave*, ___ Mich App at ___; slip op at 4. Because defendants in this

case are not entities or persons capable of committing medical malpractice, the claims cannot sound in medical malpractice. The claims alleged in plaintiff's complaint therefore sound in ordinary negligence.[2]

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Amy Ronayne Krause
/s/ Colleen A. O'Brien

---

[2] Given this conclusion, we decline to address plaintiff's additional challenge that the trial court abused its discretion when it chose to strike the affidavit offered by plaintiff in support of her motion for reconsideration.