*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHARISE AHEARN, Personal Representative of the
ESTATE OF STEVEN JOHN AHEARN,

Plaintiff-Appellant,

v

HENRY FORD HEALTH SYSTEM, doing business
as HENRY FORD MACOMB HOSPITAL, HENRY
FORD MACOMB HOSPITAL CORPORATION,
ST. CLAIR ORTHOPAEDICS AND SPORTS
MEDICINE, PC, RICHARD TYSON PERRY, and
JEAN ANN EDMONSON,

Defendants-Appellees.

UNPUBLISHED
January 18, 2024

No. 364366
Macomb Circuit Court
LC No. 2021-001545-NH

Before: GLEICHER, P.J., and BORRELLO and SHAPIRO, JJ.

PER CURIAM.

In this medical malpractice case, plaintiff appeals by right an order granting summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) to defendants. For the reasons set forth in this opinion, we reverse in part and remand for further proceedings.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

In June 2019, Steven John Ahearn (decedent) underwent a surgical procedure called a lumbar laminectomy. During this procedure, the surgeon, who is not a party to this case, placed a drain tube in decedent to allow for the drainage of postoperative fluids. Defendant Dr. Richard

---

[1] Plaintiff's complaint asserted numerous claims, including professional negligence or malpractice, ordinary negligence, gross negligence, and willful or wanton misconduct. The trial court granted summary disposition to defendants with respect to all of these claims. On appeal, plaintiff challenges only the dismissal of the claim pertaining to defendant Edmonson's alleged malpractice (and the vicarious liability of the other defendants for that malpractice), so we only reverse in part.

-1-

Tyson Perry, a partner in defendant St. Clair Orthopaedics, the same practice as the surgeon who performed the procedure, provided decedent's inpatient postoperative care. Dr. Perry was also the supervising physician for Jean Ann Edmonson, a certified nurse practitioner and employee of St. Clair Orthopaedics. Dr. Perry was required to cosign Edmonson's progress notes as a matter of hospital policy. Dr. Perry and Edmonson saw plaintiff together during their hospital rounds.

Two days after decedent's surgery, Edmonson made notes in decedent's hospital record indicating his drain tube was discontinued and removed. Specifically, Edmonson's notes stated, in relevant part: "D/c [discontinue] drain" and "Drain out[.]" When questioned at her deposition about the note indicating the drain was discontinued and removed, Edmonson testified she was likely the person who decided the drain could be removed, but could not remember whether she was the person who actually removed it. Edmonson averred the drain could have been removed by her or a registered nurse who was not a nurse practitioner, but, again, she did not know who actually removed the drain. Both Edmonson and Dr. Perry testified Dr. Perry was not the one who removed the drain.

Months later, decedent saw another orthopedic surgeon, Dr. Graziano, complaining of worsening back pain. Dr. Graziano's physical examination of decedent revealed swelling in the area of the surgical incision from his laminectomy. An MRI indicated moderate stenosis was still present, and there was fluid collected in the area where the laminectomy was performed. Dr. Graziano performed a fusion surgery on decedent, and, at the outset of the procedure, found and removed approximately "4 inches of broken drain tubing" from decedent's body. Dr. Graziano's operative notes stated: "There was a lot of scar tissue around this piece of drain that almost formed a large granuloma ball." Dr. Graziano dissected the granuloma ball to expose decedent's spine for the fusion, but did not remove the resultant pieces, because they would soften and heal once the drain tube was removed. Dr. Graziano did not find evidence of an active infection, and, once the drain tube piece was removed, completed the fusion surgery.

After commencing the present action, decedent died from causes unrelated to the alleged malpractice, and Charise Ahearn was substituted as plaintiff as the personal representative of decedent's estate. Decedent's complaint alleged professional negligence or malpractice on the part of Dr. Perry and Edmonson, including that Edmonson breached the standard of care by breaking or damaging the drain tube when removing it and failing to address the issue, and that Dr. Perry breached the standard of care by failing to discover and address the broken drain tube and failing to properly supervise Edmonson. Decedent asserted the Henry Ford defendants and St. Clair Orthopaedics were vicariously liable for the acts or omissions of their agents or employees, including Dr. Perry and Edmonson. Decedent alleged the doctrine of res ipsa loquitur applied, because a foreign object is not ordinarily left inside a patient's body absent someone's negligence, and defendants had exclusive control of an instrumentality that caused the foreign object to be left inside decedent's body. Decedent also alleged claims of gross negligence or intentional, willful, or wanton conduct, as well as ordinary negligence, all in connection with the same underlying allegations regarding the broken drain tube.

Defendants St. Clair Orthopaedics, Dr. Perry, and Edmonson moved for summary disposition under MCR 2.116(C)(8) and (10), which the Henry Ford defendants joined. The trial court granted the motion under MCR 2.116(C)(10) and dismissed plaintiff's complaint with prejudice. The trial court dismissed the claims for ordinary negligence, gross negligence, and

willful or wanton misconduct because the case sounded in medical malpractice and there was no evidence Dr. Perry or Edmonson exhibited deliberate indifference or recklessness demonstrating a substantial lack of concern for whether decedent was injured. As to the medical malpractice claim, the trial court found "no evidentiary basis from which to conclude defendant Edmonson improperly removed the drain tubing or had any reason to know the tubing had broken off inside [decedent]." The trial court also concluded that, "[g]iven the lack of evidence that defendant Edmonson proximately caused any injury to [decedent], defendant Dr. Perry cannot be liable for failing to properly supervise her." Further, "there [was] no basis for finding defendant Dr. Perry directly liable for malpractice." Lastly, the trial court determined plaintiff could not rely on the doctrine of res ipsa loquitur to establish negligence for Dr. Perry and Edmonson. Dr. Perry and Edmonson were thus entitled to summary disposition. The Henry Ford defendants and St. Clair Orthopaedic were likewise entitled to summary disposition, because the claims against them were premised on the imposition of vicarious liability for the acts of Dr. Perry and Edmonson.

## II. ANALYSIS

On appeal, plaintiff argues the trial court erred by granting summary disposition to defendants with respect to the alleged malpractice of Edmonson because there was enough evidence to establish a genuine issue of material fact regarding whether Edmonson removed the drain tube and breached the standard of care in doing so. We agree.[2]

"The plaintiff in a medical malpractice action bears the burden of proving: (1) the applicable standard of care, (2) breach of that standard by defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury." *Cox v Hartman*, 322 Mich App 292, 299; 911 NW2d 219 (2017) (quotation marks and citation omitted). Malpractice claims may be asserted "against any licensed healthcare professional, including nurses." *Id.* at 300. "In general, expert testimony is necessary in a malpractice action to establish the applicable standard of care and the defendant's breach of that standard." *Id.* Expert testimony must have a factual basis and cannot be premised on speculation. *Albro v Drayer*, 303 Mich App 758, 765; 846 NW2d 70 (2014). "Disagreements pertaining to an expert witness's interpretation of the facts are relevant to the weight of that testimony and not its admissibility." *Lenawee Co v Wagley*, 301 Mich App 134, 166; 836 NW2d 193 (2013).

The evidence presented by plaintiff supports a reasonable inference that Edmonson, a nurse practitioner, removed decedent's drain tube. Edmonson made notes in decedent's hospital record two days after his surgery indicating his drain tube had been discontinued and removed. Edmonson testified she likely made the decision to remove the drain tube but the drain tube could have been

---

[2] We review a trial court's decision on a motion for summary disposition de novo. See *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). Motions for summary disposition under MCR 2.116(C)(10) test "the factual sufficiency of a claim." *Id.* "When reviewing such a motion, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the party opposing the motion." *Id.* (quotation marks and citation omitted). "A genuine issue of material fact exists when the record 'leave[s] open an issue upon which reasonable minds might differ.' " *Id.* (citation omitted).

removed by herself or a registered nurse. Edmonson could not recall if she or a registered nurse removed the drain tube. Further, in response to plaintiff's request for admissions, the Henry Ford defendants stated there was "no evidence to suggest that a registered nurse discontinued [decedent's] drain on June 5, 2019[,]" and in response to an interrogatory asking for a more detailed explanation regarding the responses to the request for admissions, the Henry Ford defendants further explained, in relevant part: "These Defendants, after reasonable inquiry, have discovered no evidence that the drain was removed by the nursing staff" and that "the nurse assigned to [decedent] at the time" also did not remove the drain tube.[3] Overall, the evidence could support a reasonable inference by the trier of fact that Edmonson removed the drain tube.[4]

Next, there was sufficient evidence to establish a genuine issue of material fact regarding whether Edmonson breached the standard of care in connection with the removal of the drain tube. Plaintiff's nurse practitioner expert, Donald Bucher, D.N.P., R.N., testified that "there was a failure to recognize when that drain came out that there was any damage to the drain, [and] that there was likely residual tubing still in the patient." Bucher estimated he had removed approximately 50 drain tubes in his career, and he knew how to properly do so.[5] Given Dr. Graziano's discovery of four inches of broken drain tube in decedent's body, Bucher believed the tube removed from decedent two days after his laminectomy would be frayed or appear abnormal. Bucher testified that when a drain tube breaks, it is often "frayed at the end or there's evidence that the tubing has been stretched or there's damage at that end of that tubing." Because of this, Bucher opined Edmonson should have known there was a broken piece of the drain tube left in decedent's body, and upon removing the drain tube, Edmonson should have inspected it for damage. Edmonson

---

[3] Defendants argue the Henry Ford defendants' admissions are not admissible against other defendants, but defendants fail to address the fact that the Henry Ford defendants also provided the pertinent information in their response to plaintiff's interrogatory.

[4] Plaintiff also refers to testimony by one of plaintiff's experts, Sharon Ponting, R.N., that "[t]here was no evidence that there was a physician's order or an LIP [licensed independent practitioner] order [to discontinue or remove the drain tube], and a nurse does not remove a drain without an order." Defendants note plaintiff did not rely on this portion of Ponting's testimony below, and Ponting has never worked in Michigan, let alone at Henry Ford Macomb Hospital. As explained, however, there was enough evidence to allow a reasonable inference that Edmonson removed the drain tube even without considering this testimony.

[5] Defendants note Bucher did not testify about any experience with broken drain tubes. Nonetheless, Bucher's testimony indicated he had experience in removing about 50 drain tubes in his career and he knew how to properly do so. Bucher possessed the minimum qualifications necessary to testify as a standard-of-care expert. As the Supreme Court has noted, limitations in an expert's qualifications "are relevant to the weight, not the admissibility, of [their] testimony." *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 788-789; 685 NW2d 391 (2004). "Gaps or weaknesses in the witness's expertise are a fit subject for cross-examination, and go to the weight of his testimony, not its admissibility. The extent of a witness's expertise is usually for the jury to decide." *Surman v Surman*, 277 Mich App 287, 309-310; 745 NW2d 802 (2007) (quotation marks and citations omitted).

should have suspected a piece of the drain tube remained in decedent's body and ordered imaging to determine if this was the case.

On the basis of Bucher's experience in removing drain tubes, and his review of the facts in this case, including Dr. Graziano's discovery of four inches of broken drain tube while operating on decedent, Bucher opined the tube removed from decedent two days after his laminectomy would have been frayed or appeared abnormal or irregular when removed. Bucher's opinion that Edmonson should have realized or suspected that a broken piece of drain tube was left in decedent's body and should have ordered imaging tests was properly based on the facts of the case, reasonable inferences therefrom, and Bucher's professional experience.[6] Therefore, a genuine issue of material fact exists regarding whether Edmonson breached the standard of care in connection with the removal of the drain tube. The trial court thus erred in granting summary disposition with respect to this theory of malpractice.

As an alternative ground for affirmance, defendants assert plaintiff cannot establish damages. We disagree.

As noted, an injury is an element of a medical malpractice claim. *Cox*, 322 Mich App at 299. There was evidence decedent suffered an injury. While the remaining drain tube in decedent's body was not the cause of his subsequent fusion surgery, and there was no evidence of an active infection, given the retention of a foreign object inside decedent's body, and the formation of scar tissue which "almost formed a large granuloma ball," decedent suffered an injury.

Defendants cite *Henry v Dow Chem Co*, 473 Mich 63, 75-76; 701 NW2d 684 (2005), for the proposition that both an injury and damages must be shown in a tort action, and the remaining tube was not the cause of decedent's back pain. However, the evidence supports a reasonable inference that the presence inside decedent's body of a four-inch piece of drain tube, and the scar tissue surrounding it, contributed to decedent's pain. When decedent saw Dr. Graziano before his fusion surgery, he complained of worsening back pain, and Dr. Graziano's physical examination revealed large swelling in the area of the laminectomy incision. An MRI indicated that moderate stenosis was still present and there was fluid collected in the area where the surgery was performed. The ball of scar tissue thus appears to have contributed to the swelling at the site where the laminectomy was performed, and defendants' argument there is no evidence of damages fails.

---

[6] On appeal, plaintiff also relies on some of Ponting's testimony to argue there was evidence that Edmonson breached the standard of care. As defendants note, however, plaintiff conceded both below and on appeal that Ponting was not a standard-of-care expert. As a registered nurse, Ponting was not qualified to testify on the standard of care of a nurse practitioner. See *Cox*, 322 Mich App at 305 (noting that "[t]he health profession of a nurse and the health profession of a nurse practitioner are different" and one cannot testify on the standard of care with respect to the other). As we already explained, however, Bucher's testimony was sufficient to establish a genuine issue of material fact whether Edmonson breached the standard of care.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro