McELHANEY v HARPER-HUTZEL HOSPITAL

Docket No. 254376. Submitted August 10, 2005, at Lansing. Decided January 19, 2006, at 9:10 a.m. Leave to appeal sought.

Jerel McElhaney, a minor, by his next friend, Stacey McElhaney, brought a medical malpractice action in the Wayne Circuit Court against Harper-Hutzel Hospital, alleging that the negligent actions of the defendant's nurse midwife during his mother's labor caused him mental retardation and other impairments. The accompanying affidavit of merit was executed by an obstetrician/gynecologist. The court, James J. Rashid, J., granted the defendant summary disposition. The plaintiff appealed, and the defendant cross-appealed.

The Court of Appeals *held*:

1. The plaintiff's affidavit of merit was not defective when the complaint was filed. The belief of the plaintiff's attorney that the physician signing the affidavit of merit met the requirements for an expert witness under MCL 600.2169 was reasonable, as required by MCL 600.2912(d)(1). The plaintiff's complaint alleged malpractice by the actions of the defendant's physicians and nurses, including the nurse midwife. Thus, the attorney's belief that the affidavit met the requirement was reasonable when the complaint was filed because the affiant was qualified under MCL 600.2169 to testify as an expert witness against those physicians, and it was not until discovery occurred that the plaintiff narrowed the malpractice claim to the actions of the nurse midwife.

2. The trial court, however, properly granted summary disposition to the defendant. A nurse midwife is a health care professional licensed under the Public Health Code against whom a medical malpractice claim may be brought. To qualify to offer testimony regarding the appropriate standard of practice or care applicable to a nonphysician, such as a nurse midwife, an expert witness must practice or teach in the same health profession as that nonphysician. MCL 600.2169(1)(b). The plaintiff's expert witnesses were obstetricians/gynecologists. Under the plain language of the statute, an obstetrician/gynecologist may not testify about the standard of practice or care for a nurse midwife. Because the testimony of the plaintiff's expert witnesses would not be

admissible to establish the standard of care applicable to the defendant's nurse midwife, the plaintiff was without evidence to sustain this part of his claim and failed to establish a genuine issue of material fact regarding the standard of care and the subsequent breach.

Affirmed.

Negligence — Medical Malpractice — Standard of Practice or Care — Evidence of Expert Witnesses — Nurse Midwives.

An expert witness, in order to qualify to offer testimony regarding the appropriate standard of practice or care applicable to a licensed health professional in a medical malpractice action, must practice or teach in the same health profession; an obstetrician/gynecologist may not testify about the standard of practice or care applicable to a nurse midwife (MCL 600.2169[1][b]).

*Worsham & Victor, P.C.* (by *Howard J. Victor* and *John J. Schutza*), for the plaintiff.

*Kitch Drutchas Wagner DeNardis & Valitutti* (by *Susan Healy Zitterman*) for the defendant.

Before: Saad, P.J., and Hoekstra and Markey, JJ.

Saad, P.J.

I

In this medical malpractice action, the dispositive question is whether, under MCL 600.2169, an obstetrician/gynecologist may testify about the standard of care applicable to a nurse midwife. Plaintiff claims that, during his mother's labor, the negligent actions of defendant's nurse midwife caused him mental retardation and other impairments. We hold that the trial court correctly granted summary disposition to defendant because plaintiff failed to establish a genuine issue of material fact regarding the standard of care applicable to a nurse midwife.

Defendant contends that, regardless of whether plaintiff's experts could establish that defendant's midwife *caused* his injuries, as obstetricians/gynecologists, the experts were not qualified to offer testimony regarding the standard of practice of defendant's nurse midwife. Accordingly, defendant maintains that the trial court correctly granted summary disposition to defendant because plaintiff failed to establish a genuine issue of material fact by admissible evidence.[1] In its cross-appeal, defendant says that the statutorily required affidavit of merit was insufficient because an obstetrician/gynecologist may not testify regarding a nurse midwife, and therefore plaintiff's claim was not properly initiated.

## II. AFFIDAVIT OF MERIT: SECTION 2912d(1)

A medical malpractice claim may be brought against any licensed health care professional, which includes an individual licensed or registered under article 15 of the Public Health Code.[2] MCL 600.2912; MCL 600.5838a(1); *Bryant v Oakpointe Villa Nursing Ctr, Inc,* 471 Mich 411, 422-423; 684 NW2d 864 (2004).[3] A nurse midwife is a licensed health care professional under the Public Health Code, which defines "certified

---

[1] On appeal, this Court reviews de novo a trial court's decision on a motion for summary disposition. *Dressel v Ameribank,* 468 Mich 557, 561; 664 NW2d 151 (2003). Matters of statutory interpretation and questions of law are also reviewed de novo. *Atchison v Atchison,* 256 Mich App 531, 534-535; 664 NW2d 249 (2003); *Ligouri v Wyandotte Hosp & Med Ctr,* 253 Mich App 372, 375; 655 NW2d 592 (2002).

[2] MCL 333.16101 *et seq.*

[3] A medical malpractice action may be commenced against nonphysicians such as nurses, medical technologists, physical therapists, and optometrists. MCL 600.2912; MCL 600.5838a(1); *Cox v Flint Bd of Hosp Managers,* 467 Mich 1, 19-20; 651 NW2d 356 (2002); *Adkins v Annapolis Hosp,* 420 Mich 87, 94-95; 360 NW2d 150 (1984); *Tobin v Providence Hosp,* 244 Mich App 626, 670-671; 624 NW2d 548 (2001).

nurse midwife" as "an individual licensed as a registered professional nurse under part 172 who has been issued a specialty certification in the practice of nurse midwifery by the board of nursing under section 17210." MCL 333.2701(b). Section 17210, MCL 333.17210, provides that the Board of Nursing "may issue a specialty certification to a registered professional nurse who has advanced training beyond that required for initial licensure and who has demonstrated competency through examination or other evaluative processes and who practices in 1 of the following health profession specialty fields: nurse midwifery, nurse anesthetist, or nurse practitioner." A "registered professional nurse" is defined as "an individual licensed under this article to engage in the practice of nursing which scope of practice includes the teaching, direction, and supervision of less skilled personnel in the performance of delegated nursing activities." MCL 333.17201(1)(c); see *Cox v Flint Bd of Hosp Managers,* 467 Mich 1, 19; 651 NW2d 356 (2002).

Defendant argues that plaintiff's affidavit of merit was defective and, thus, plaintiff failed to successfully initiate a medical malpractice claim. Section 2912d(1), MCL 600.2912d(1), provides that a plaintiff initiating a medical malpractice action "shall file with the complaint an affidavit of merit signed by a health professional who the plaintiff's attorney reasonably believes meets the requirements for an expert witness under section 2169." See also MCR 2.112(L); *Geralds v Munson Healthcare,* 259 Mich App 225, 232; 673 NW2d 792 (2003). The affidavit of merit must include a statement regarding (1) the applicable standard of practice or care, (2) how the applicable standard of practice or care was breached by the health professional or health facility receiving the notice of intent to file a claim, (3) the actions that should have been taken or omitted by the

health professional or health facility in order to have complied with the applicable standard of practice or care, and (4) the manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice. MCL 600.2912d(1); see *Cox, supra,* p 10.

Section 2169(1), MCL 600.2169(1), governs expert witnesses offering testimony regarding the applicable standard of care. *Halloran v Bhan,* 470 Mich 572, 578 n 6; 683 NW2d 129 (2004). Section 2169(1) provides that a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:

> (a) If the party against whom or on whose behalf the testimony is offered is a *specialist,* specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.

> (b) Subject to subdivision (c), during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:

> (*i*) The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, the active clinical practice of that specialty.

> (*ii*) The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.

(c) If the party against whom or on whose behalf the testimony is offered is a *general practitioner,* the expert witness, during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:

(*i*) Active clinical practice as a general practitioner.

(*ii*) Instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed. [MCL 600.2169(1) (emphasis added); see *Decker v Flood,* 248 Mich App 75, 81-82; 638 NW2d 163 (2001).]

Our courts have interpreted the term "party," against whom testimony is offered, to encompass a hospital party that has been sued under a vicarious liability theory and its agents. See *Nippa v Botsford Gen Hosp (On Remand),* 257 Mich App 387, 396; 668 NW2d 628 (2003).

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Halloran, supra,* p 577. The first step is to examine the plain language of the statute itself. *In re MCI Telecom Complaint,* 460 Mich 396, 411; 596 NW2d 164 (1999). The Legislature is presumed to have intended the meaning it plainly expressed. *Pohutski v City of Allen Park,* 465 Mich 675, 683; 641 NW2d 219 (2002). If the statutory language is clear and unambiguous, appellate courts presume that the Legislature intended the meaning plainly expressed, and further judicial construction is not permitted. *Atchison v Atchison,* 256 Mich App 531, 535; 664 NW2d 249 (2003).

The parties agree that nurse midwives do not practice medicine. Accordingly, by the plain meaning of the terms of the statute, we find that § 2169(1)(a) and (c)

does not apply because a nurse midwife is neither a specialist nor a general practitioner.[4] Section 2169(1)(b), however, makes no qualification of its applicability and, therefore, must be considered to apply generally to all malpractice actions, including those initiated against nonphysicians. See *Halloran, supra,* p 586 (KELLY, J., dissenting); *Hamilton v Kuligowski,* 261 Mich App 608, 610-611; 684 NW2d 366 (2004). Specifically, subsection b(*i*) states that an expert witness must devote "a majority of his or her professional time" to the "active clinical practice *of the same health profession*" as the defendant. MCL 600.2169(1)(b)(*i*) (emphasis added); see *Hamilton, supra,* p 610.

The plain language of § 2912d indicates that an affidavit of merit is required in every medical malprac-

---

[4] The statute does not define the terms "specialist" and "general practitioner." *Cox, supra,* p 18. We give undefined statutory terms their plain and ordinary meanings and consult dictionary definitions when appropriate. *Halloran, supra,* p 578. A "general practitioner" is defined as "a medical practitioner whose practice is not limited to any specific branch of medicine." *Random House Webster's College Dictionary* (1995). A "specialist" is defined as "a medical practitioner who deals only with a particular class of diseases, conditions, patients, etc." *Id.* See *Decker, supra,* p 83. "Physician" has been defined by statute, which indicates that a physician is "an individual licensed under this article to engage in the practice of medicine." MCL 333.17001(1)(c); see *Cox, supra,* p 19. The "practice of medicine" has also been defined by statute as "the diagnosis, treatment, prevention, cure, or relieving of a human disease, ailment, defect, complaint, or other physical or mental condition, by attendance, advice, device, diagnostic test, or other means, or offering, undertaking, attempting to do, or holding oneself out as able to do, any of these acts." MCL 333.17001(1)(d); see *Cox, supra,* pp 19-20.

Nurse midwives are registered professional nurses with specialty certification in the practice of nurse midwifery issued by the Board of Nursing. MCL 333.17210; MCL 333.2701(b). By the plain and ordinary meanings of "general practitioner," "specialist," and "physician," it is clear that these professionals practice medicine. Registered professional nurses, on the other hand, practice nursing. See *Cox, supra,* p 19. Therefore, § 2169(1)(a) and (c) does not apply to nurse midwives.

tice action, including those initiated against nonphysicians. MCL 600.2912d(1). Pursuant to this section, the plaintiff's attorney must "reasonably believe[]" that the person signing the affidavit of merit "meets the requirements for an expert witness under section 2169." *Id.*; see *Grossman v Brown*, 470 Mich 593, 599; 685 NW2d 198 (2004). In this action, plaintiff's experts must meet the requirements of § 2169(1)(b).

Plaintiff's complaint alleged medical malpractice against defendant for the actions of its "doctors, nurses, a nursing midwife, and residents." Plaintiff attached an affidavit of merit executed by Dr. Ronald G. Zack, an obstetrician/gynecologist. The affidavit of merit focused on the standard of care breached by doctors or physicians and staff, and did not offer an opinion regarding the specific standard of care applicable to or breached by the nurse midwife. As discovery progressed, it became clear that plaintiff's claim of medical negligence focused primarily on the actions of defendant's nurse midwife. Although an obstetrician/gynecologist does not devote a majority of his or her time to the same health profession as a nurse midwife pursuant to § 2169(1)(b), plaintiff's attorney's belief that Dr. Zack would fulfill the requirements of § 2169 was at least reasonable at the time the complaint was filed because it was not until discovery was conducted that plaintiff narrowed his malpractice claim to the actions of the nurse midwife. MCL 600.2912d(1). At the time of plaintiff's complaint, plaintiff's claims focused on the actions of physicians and staff who allegedly failed, in part, to timely diagnose and treat fetal distress and to fully evaluate his mother. As a physician and obstetrician/gynecologist, Dr. Zack was certainly qualified under § 2169 to testify as an expert witness against these physicians. Therefore, plaintiff's attorney's belief

that an obstetrician/gynecologist met the requirements for an expert witness under § 2169 was reasonable.

### III. EXPERT TESTIMONY

With respect to the dispositive issue, we agree with defendant and the trial court that plaintiff failed to establish a genuine issue of material fact in response to defendant's summary disposition motion because the testimony of plaintiff's experts, Dr. Zack and Dr. Michael Berke, was not admissible evidence regarding the standard of care applicable to a nurse midwife.

For an expert to be qualified to testify regarding the standard of care, the expert must be qualified under § 2169(1). *Halloran, supra,* p 578 n 6. As previously discussed, § 2169(1)(b) applies here because plaintiff's claims are directed against defendant's nonphysician nurse midwife. Under this section, to qualify to offer testimony regarding the appropriate standard of practice or care of the nurse midwife, plaintiff's experts must practice in "the same health profession" as the nurse midwife. MCL 600.2169(1)(b)(*i*). Nurse midwives are licensed to practice under MCL 333.17211 and certified under MCL 333.17210. Dr. Zack and Dr. Berke, however, are obstetricians/gynecologists who are physicians under the Public Health Code definition, MCL 333.17001(1)(c). These experts, therefore, do not qualify to testify regarding the standard of care applicable to defendant's nurse midwife.

This conclusion is bolstered by the Legislature's decision to change § 2169 for cases filed on or after April 1, 1994. The former version of the statute applied only to physician or dental specialists and required that witnesses who testified regarding the standard of care or practice must have specialized in the same specialty or a related area of medicine, surgery, or dentistry and must have

devoted a substantial portion of professional or instructional time to that practice. The amended statute at issue here applies to *all* licensed health professionals and requires that the expert who testifies about the standard of care or practice teach in or devote a majority of time to the active clinical practice of *"the same health profession . . . ."* MCL 600.2169(1)(b). Thus, the plain language of the statute and the legislative intent in amending the statute ensures that, with respect to all licensed health professionals, a witness testifying about the standard of care or practice must practice or teach in the same health profession. Though it may appear reasonable that a physician with substantial educational and professional credentials should be able to testify about the standard of care of a nurse who works in a closely related field, we are constrained by the plain words of the statute that the expert witness must practice in the "same health profession." Consequently, we conclude that because nurse midwives are separately licensed professionals who practice nursing with specialty certification in the practice of nurse midwifery, obstetricians/gynecologists may not testify about their standard of practice or care.

On a motion for summary disposition, the existence of a disputed fact may only be established by admissible evidence. MCR 2.116(G)(6); *Veenstra v Washtenaw Country Club*, 466 Mich 155, 163-164; 645 NW2d 643 (2002). Dr. Zack and Dr. Berke were qualified to testify at trial regarding how the nurse midwife's alleged breach caused plaintiff's injury. Their testimony would be relevant regarding what an obstetrician/gynecologist would have done had one been called. However, pursuant to the strict requirements of § 2169, their testimony would not be admissible to establish the standard of care applicable to defendant's nurse midwife. Plaintiff, therefore, is left without evidence to sustain this part of

his claim. Accordingly, defendant was entitled to summary disposition because plaintiff failed to establish a genuine issue of material fact regarding the standard of care and the subsequent breach. See *Craig v Oakwood Hosp*, 471 Mich 67, 86; 684 NW2d 296 (2004). For this reason, we affirm the trial court's grant of summary disposition in favor of defendant.[5]

Affirmed.

---

[5] Because this issue is dispositive, we need not decide whether plaintiff proved the causation element of her claim. And, though arguably we need not decide the affidavit of merit issue raised in defendant's cross-appeal, we do so because, had defendant been correct on this issue, this case would not have proceeded to the stage that involves the dispositive issue of expert trial testimony.