*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KELLEY CREGO,

        Plaintiff-Appellant,

v

EDWARD W. SPARROW HOSPITAL
ASSOCIATION, SPARROW HEALTH
SYSTEM, SHIRLEY LIMA, M.D., and AMBER
MCLEAN, D.O.,

        Defendants-Appellees.

FOR PUBLICATION
April 16, 2019

No. 338230
Ingham Circuit Court
LC No. 17-000031-NH

Before: CAVANAGH, P.J., and MARKEY and LETICA, JJ.

LETICA, J. (dissenting in part, concurring in part).

I respectfully disagree with the majority's reading of MCL 600.2169(1)(b)(*i*) and would affirm the trial court's determination that an allopathic physician[1] was not qualified to offer standard-of-care testimony against an osteopathic physician[2] because, despite their common board-certified specialty, they were licensed differently. Nevertheless, I agree that the circuit court's order dismissing Crego's complaint against the osteopathic physician and the hospital with prejudice must be reversed because Crego's attorney could have reasonably believed that the allopathic physician satisfied the requirements of MCL 600.2169 when filing the affidavit of merit (AOM).

---

[1] An allopathic physician or medical doctor (M.D.) is licensed to engage in the practice of medicine under part 170, MCL 333.17001 *et seq.*, of the Public Health Code, MCL 333.1101 *et seq.*

[2] An osteopathic physician or doctor of osteopathy (D.O.) is licensed to engage in the practice of osteopathic medicine and surgery under part 175, MCL 333.17501 *et seq.*, of the Public Health Code.

# I. EXPERT QUALIFICATION UNDER MCL 600.2169

A plaintiff initiating a medical malpractice action must file with the complaint "an affidavit of merit signed by an expert who the plaintiff's attorney reasonably believes meets the requirements of MCL 600.2169." *Grossman v Brown*, 470 Mich 593, 598; 685 NW2d 198 (2004) (emphasis omitted). See also MCL 600.2912d(1). MCL 600.2169(1), in turn, sets forth the criteria a proposed expert witness must satisfy in order to testify regarding the appropriate standard of practice or care. *Rock v Crocker*, 499 Mich 247, 260; 884 NW2d 227 (2016). In pertinent part, the statute reads:

> (1) In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:

> (a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.

> (b) Subject to subdivision (c), during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:

> (*i*) The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, the active clinical practice of that specialty.

> (*ii*) The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.

> (c) If the party against whom or on whose behalf the testimony is offered is a general practitioner, the expert witness, during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:

> (*i*) Active clinical practice as a general practitioner.

> (*ii*) Instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed. [MCL 600.2169(1)(a) through (c).]

Here, Crego asserted a claim of medical malpractice against Dr. McLean, a board-certified obstetrician gynecologist. The AOM attached to Crego's complaint was signed by Dr. McCarus, who is board certified in the same specialty. As recognized by the majority, the parties do not appear to dispute that Dr. McCarus's specialization and board certification satisfies the requirements of subdivision (a) or that Dr. McCarus spent the majority of his professional time in the year preceding the alleged malpractice in the active clinical practice of obstetrics and gynecology. The crux of the parties' disagreement turns on whether Dr. McCarus can satisfy the requirements of subdivision (b)(*i*);[3] specifically, whether he was engaged in the active clinical practice of the "same health profession" in which Dr. McLean is "licensed." See MCL 600.2169(1)(b)(*i*).

The majority accepts Crego's argument that the "same health profession" language is applicable only in cases involving a nonspecialist defendant.[4] And, like Crego, the majority highlights the following excerpt from *Woodard v Custer*, 476 Mich 545, 565 & n 11; 719 NW2d 842 (2006):

> MCL 600.2169(1)(b) provides that if the defendant physician is a specialist, the expert witness must have "during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either . . . the active clinical practice of that specialty [or] [t]he instruction of students in an . . . accredited health professional school or accredited residency or clinical research program in the same specialty."[11]

> ───────────────────

> [11] *If the defendant physician is not a specialist*, § 2169(1)(b) requires the plaintiff's expert witness to have "during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either . . . [t]he *active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed* [or] [t]he instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed . . . ." [Emphasis added; alterations in original.]

The majority concludes that Dr. McCarus is qualified to offer standard of care testimony against Dr. McLean because he practiced the same specialty at the relevant time, regardless of whether

───────────────────

[3] Because Dr. McCarus's AOM does not indicate that he engaged in instruction of students during the relevant time, subdivision (b)(*ii*) is not at issue.

[4] As Crego failed to present this argument below, I would review it for plain error affecting her substantial rights. *In re Smith Trust*, 278 Mich App 283, 285; 731 NW2d 810 (2007).

allopathic medicine and osteopathic medicine are the "same health profession." I respectfully disagree.

The primary issue in *Woodard* was the degree to which an expert's specialization, certification, and relevant experience must match that of the defendant when multiple specialties, subspecialties, or certificates of special qualification are involved. *Id*. at 554-557, 578-579. Indeed, in granting the applications for leave to appeal in *Woodard* and its companion case, the Court directed the parties to brief, among other items, "whether MCL 600.2169(1)(b) requires an expert witness to practice or teach the same subspecialty as the defendant"; "whether MCL 600.2169 requires an expert witness to match all specialties, subspecialties, and certificates of special qualification that a defendant may possess, or whether the expert witness need only match those that are relevant to the alleged act of malpractice"; "the proper construction of the words 'specialist' and 'that specialty' in MCL 600.2169(1)(a) and MCL 600.2169(1)(b)(*i*)"; and "the proper construction of 'active clinical practice' and 'active clinical practice of that specialty' as those terms are used in MCL 600.2169(1)(b)(*i*)." *Id*. at 556 n 2, 557 n 3. It is clear from these directives and the discussion in *Woodard* that the Supreme Court was focused on interpreting the "specialty" language in MCL 600.2169. Because the *Woodard* Court was not called upon to interpret the "same health profession" language of the statute, the above-quoted passage from *Woodard* does not have precedential value with respect to this issue. See *Riverview v Michigan*, 292 Mich App 516, 523; 808 NW2d 532 (2011) ("A matter that a tribunal merely assumes in the course of rendering a decision, without deliberation or analysis, does not thereby set forth binding precedent."). Instead, I read the above-quoted passage as recognizing (1) that MCL 600.2169(1)(b)(*i*) requires, *among other things*, that the expert be engaged in the active clinical practice of the same specialty practiced by the defendant, and (2) that a nonspecialist—who by necessity cannot engage in the active clinical practice of a specialty—need only engage in the active clinical practice of the same health profession in which the defendant is licensed. Unlike the majority, I do not read *Woodard* as holding that the "same health profession" requirement is inapplicable to a specialist.

This conclusion is further supported by well-recognized principles of statutory construction. It is axiomatic that a court's driving purpose in statutory interpretation is to discern and give effect to the intent of the Legislature as expressed by the plain or statutorily defined meaning of the language itself. *Grossman*, 470 Mich at 598; *Brown v Hayes*, 270 Mich App 491, 497; 716 NW2d 13 (2006), rev'd in part on other grounds 477 Mich 966 (2006). When the language is unambiguous, it must be enforced as written. *Grossman*, 470 Mich at 598. And if at all possible, " '[e]very word of a statute should be given meaning and no word should be treated as surplusage or rendered nugatory . . . .' " *People v Pinkney*, 501 Mich 259, 288; 912 NW2d 535 (2018) (alteration in original), quoting *Baker v Gen Motors Corp*, 409 Mich 639, 665; 297 NW2d 387 (1980).

MCL 600.2169(1)(b)(*i*) provides that an expert must have spent a majority of his or her professional time in "[t]he active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed *and*, if the party is a specialist, the active clinical practice of that specialty." (Emphasis added). As recognized by the majority, "and" is a conjunctive term. See *Karaczewski v Farbman Stein & Co*, 478 Mich 28, 33; 732 NW2d 56 (2007), overruled in part on other grounds by *Bezeau v Palace Sports & Entertainment, Inc*, 487 Mich 455; 795 NW2d 797 (2010). Thus, its use in this context indicates

that "if the party is a specialist," the expert must satisfy *both* requirements—that is, active clinical practice in the same health profession *and* the same specialty. In fact, when introduced, the underlying bill included the word "or."[5] Later, however, the Legislature opted to replace the disjunctive word "or" with the conjunctive word "and." Interestingly, the majority points to the use of the word "or" in MCL 600.2169(2) to suggest there is an internal consistency, but what I glean from this is that the Legislature chooses "or" when it opts to do so.

Moreover, accepting the majority's reading that the clause following the word "and" trumps, it renders the introductory language in subdivision (b)(*i*) surplusage as to physicians who specialize. This is a result that I endeavor to avoid. *Pinkney*, 501 Mich at 283 n 59, 288. In addition, it wrongly assumes no other licensed health professional may specialize when both nurses and dentists can. See MCL 333.17210(1) (authorizing a specialty certification for nurses with advanced training in certain "health professional specialty fields"); MCL 333.16608 (identifying "prosthodontics, endodontics, oral and maxillofacial surgery, orthodontics, pediatric dentistry, periodontics, or oral pathology" as fields in which a dentist may specialize). See also *Cox v Hartman*, 322 Mich App 292; 911 NW2d 219 (2017) (distinguishing between a nurse practitioner and a registered nurse); *Decker v Flood*, 248 Mich App 75, 79, 83-84; 638 NW2d 163 (2001) (holding that a dentist who routinely performed root canals and was a " 'doctor of dental surgery' . . . [as well as] a member of the American Association of Endodontists," was not qualified to offer expert testimony or provide an AOM on the standard of practice applicable to a general practitioner dentist who was allegedly negligent when he performed a root canal).

Finally, the language at issue in MCL 600.2169(1)(b)(*i*) ("the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed") also appears in both MCL 600.2169(1)(b)(*ii*) and (c)(*ii*). I read these identical words as having the same meaning throughout this statute.

Crego further posits that our focus should be on the "health profession" language, which MCL 333.16105(2) describes as "a vocation, calling, occupation, or employment performed by an individual acting pursuant to a license or registration issued under this article." Crego then suggests that Dr. McCarus and Dr. McLean share the same occupation, i.e., that of an obstetrician gynecologist. Again, Crego ignores the qualifying language "performed by an individual acting pursuant to a license or registration issued under this article," and our task is to give meaning to every word the legislature uses.

---

[5] As introduced, the pertinent portion of 1993 SB 270 read:

> (*i*) THE active clinical practice of ~~medicine or osteopathic medicine and surgery or the active clinical practice of dentistry or to,~~ the SAME HEALTH PROFESSION IN WHICH THE DEFENDANT IS LICENSED *OR*, IF THE DEFENDANT IS A SPECIALIST, THE ACTIVE CLINICAL PRACTICE OF THAT SPECIALTY OR A RELATED, RELEVANT AREA OF PRACTICE. [Emphasis added.]

Turning to the balance of Crego's claim of error with respect to this issue, *McElhaney v Harper-Hutzel Hosp*, 269 Mich App 488; 711 NW2d 795 (2006), controls. MCR 7.215(J)(1). In that case, the plaintiff alleged that he was injured at birth as a result of negligence on the part of a nurse midwife employed by the defendant hospital, and he proffered proposed standard-of-care testimony from two obstetrician gynecologists. *McElhaney*, 269 Mich App at 489, 495-496. This Court affirmed the trial court's determination that the proposed experts were not qualified to testify against the nurse midwife because they did not practice in the same health profession as the nurse midwife, as required by MCL 600.2169(1)(b)(*i*). *Id*. at 496. In reaching that conclusion, this Court reasoned that the nurse midwife was licensed to practice in nursing under MCL 333.17211 and certified in nurse midwifery under MCL 333.17210, while the proposed experts were "physicians" as defined in the Public Health Code.[6] *Id*. The Court acknowledged that "it may appear reasonable that a physician with substantial educational and professional credentials should be able to testify about the standard of care of a nurse who works in a closely related field," but concluded that it was "constrained by the plain words of the statute that the expert witness must practice in the 'same health profession.' " *Id*. at 497.

Shortly after *McElhaney*, another panel of this Court considered a similar issue in the context of expert testimony offered by a physical therapist in support of an occupational therapist defendant. *Brown*, 270 Mich App at 493-494. The *Brown* Court observed that the Public Health Code defined the term "health profession" as "a vocation, calling, occupation, or employment performed by an individual acting pursuant to a license or registration issued under this article." *Id*. at 501, quoting MCL 333.16105 (quotation marks omitted). Given this broad definition, the *Brown* Court opined that, despite the disparity between the license required of a physical therapist under part 178 of the Public Health Code and the registration required of an occupational therapist under part 183 of the Public Health Code, *Brown*, 270 Mich App at 498, both the proposed expert and the defendant were in the same "vocation, calling, occupation, or employment" because it was undisputed that they both engaged in so-called "work-hardening therapy," *id*. at 501-502.[7] Nonetheless, the *Brown* Court recognized that *McElhaney*, 269 Mich App at 497, had already held "that two people cannot be engaged in the 'same health profession' for purposes of this statute unless each has an identical license under the Public Health Code." *Brown*, 270 Mich App at 502. Bound by that precedent, the *Brown* Court concluded that the physical therapist expert was not qualified under MCL 600.2169(1)(b) to testify regarding the standard of care applicable to an occupational therapist. *Id*. at 502-503.

---

[6] See former MCL 333.17001(1)(c), as amended by 1990 PA 248 (defining the term "physician" as "an individual licensed under this article to engage in the practice of medicine"). Although "physician" is now defined by subdivision (e), the definition remains the same. See current MCL 333.17001(1)(e).

[7] According to an uncontested affidavit provided by the defendant's proposed expert, "both occupational therapists and physical therapists receive training in work-hardening techniques, that they often work side by side in work-hardening therapy programs, and that there is no difference between the work performed by an occupational therapist and a physical therapist in a work-hardening therapy program." *Brown*, 270 Mich App at 501-502.

Later, in *Bates v Gilbert*, 479 Mich 451; 736 NW2d 566 (2007), our Supreme Court seemingly agreed with this Court's consideration of licensing to determine compliance with MCL 600.2169. There, the plaintiff supported her complaint alleging medical malpractice against an optometrist with an AOM signed by an ophthalmologist. *Id*. at 453. The Supreme Court determined that the plaintiff's counsel could not have reasonably believed that ophthalmology was the "same health profession" as optometry. *Id*. at 460-461. As explained in *Bates*, optometry is defined and regulated by part 174 of the Public Health Code and involves nonphysicians who "examine the human eye to ascertain defects or abnormal conditions that can be corrected or relieved by the use of lenses." *Id*. at 459-461. Ophthalmologists, on the other hand, are physicians engaging in the practice of medicine, regulated under part 170 of the Public Health Code. *Id*. at 460. Thus, although ophthalmologists provided similar care in that they "treat diseases of the eye," ophthalmology could not be considered the same health profession as optometry for purposes of expert qualification under MCL 600.2169. *Id*. at 460-461.

Here, two physicians who admittedly hold a board certification from the same national organization[8] and practice in the same specialty, are licensed under different parts of the Public Health Code. Dr. McCarus is licensed under part 170, which governs the practice of medicine and defines a "physician" as "an individual who is licensed under this article to engage in the practice of medicine." MCL 333.17001(1)(e). It further defines the "practice of medicine" as "the diagnosis, treatment, prevention, cure, or relieving of a human disease, ailment, defect, complaint, or other physical or mental condition, by attendance, advice, device, diagnostic test, or other means, or offering, undertaking, attempting to do, or holding oneself out as able to do, any of these acts." MCL 333.17001(1)(h). In contrast, Dr. McLean is licensed under part 175, governing osteopathic medicine and surgery, which defines a "physician" as "an individual who is licensed under this article to engage in the practice of osteopathic medicine and surgery." MCL 333.17501(1)(d). Part 175 also provides the following definition for the "practice of osteopathic medicine and surgery":

> [A] *separate, complete, and independent school of medicine and surgery* utilizing full methods of diagnosis and treatment in physical and mental health and disease, including the prescription and administration of drugs and biologicals, operative surgery, obstetrics, radiological and other electromagnetic emissions, and placing special emphasis on the interrelationship of the musculoskeletal system to other body systems. [MCL 333.17501(1)(f) (emphasis added).]

This definition, and the placement of provisions concerning osteopathic medicine in a different part than those applicable to the general "practice of medicine," suggests that the Legislature did not intend that osteopathic medicine and allopathic medicine be treated as the

---

[8] The American Board of Medical Specialties (ABMS) recognizes 24 primary medical specialties, including obstetrics and gynecology, and the American Osteopathic Association recognizes 18 primary medical specialties, including obstetrics and gynecology. The ABMS certified Dr. McCarus, an osteopathic physician, as a specialist in obstetrics and gynecology.

same health profession.[9]  Therefore, given the different licensing and regulations applicable to Dr. McLean, as an osteopathic physician, and Dr. McCarus, as an allopathic physician, I would hold that the trial court did not err by ruling that Dr. McCarus was not actively engaged in the "same health profession in which [Dr. McLean] is *licensed*[.]"  See MCL 600.2169(1)(b)(*i*) (emphasis added).  Because Dr. McCarus did not satisfy the conditions of MCL 600.2169(1)(b)(*i*), the trial court correctly determined that he was unqualified to provide standard-of-care testimony against Dr. McLean.

I recognize that this Court has previously held that an expert, who was an osteopathic physician board-certified in family practice, was qualified to testify against an allopathic physician defendant, who was a general practitioner, under MCL 600.2169, "as long as MCL 600.2169(1)(c)(*i*) or (*ii*) is also satisfied." *Robins v Garg (On Remand)*, 276 Mich App 351, 359-360; 741 NW2d 49 (2007).  Because the expert's "family practice" was a "general practice" and because the expert "was engaged in general practice medicine . . . for the year preceding the date of the alleged malpractice," this Court determined that "he was qualified under MCL 600.2169(1)(c), and that plaintiff's affidavit of merit complied with MCL 600.2912d(1)." *Id*. at 360-361.  On the other hand, this Court also recognized that if the defendant was board-certified in family practice and the proposed expert was a general practitioner, the proposed expert would not be qualified to testify under MCL 600.2169(1)(a) because he would not be a board-certified specialist.  *Id*. at 360 n 3.  My conclusion here is not inconsistent with *Robins* because MCL 600.2169(1)(b) explicitly conditions its application "[s]ubject to subdivision (c)," and MCL 600.2169(1)(c)(*i*), unlike MCL 600.2169(1)(b)(*i*) and (*ii*), contains no requirement of licensure in the same health profession.[10]

## II.  REASONABLE BELIEF REGARDING EXPERT QUALIFICATION

Crego also argues that the circuit court erred by dismissing the claims arising from Dr. McLean's conduct because her trial counsel reasonably believed that Dr. McCarus was qualified to offer standard-of-care testimony against Dr. McLean.  I agree.

As already noted, a plaintiff commencing a lawsuit alleging medical malpractice must attach an AOM to his or her complaint.  MCL 600.2912d(1); *Grossman*, 470 Mich at 598.  While an expert may not offer testimony concerning the standard of practice or care at trial in the absence of strict compliance with the requirements of MCL 600.2169, MCL 600.2192d(1) recognizes that at the time the AOM is prepared, the plaintiff and his or her attorney have only limited information available from which to determine the credentials of the defendant and, correspondingly, the credentials required of the proposed expert.  *Grossman*, 470 Mich at 598-599.  Thus, because the expert who signs the AOM must be selected without the benefit of full

---

[9] Part 180 of Public Health Code also provides licensing to yet a third type of physician—a podiatric physician.  See MCL 333.18001(c).

[10] While the statutory language dictates this result, I recognize that allopathic physicians far outnumber their osteopathic counterparts and, therefore, securing an expert for a medical-malpractice matter involving a specialist with an osteopathic licensure may prove challenging.

discovery, MCL 600.2912d(1) allows "considerable leeway in identifying an expert affiant" at the AOM stage of the proceedings. *Bates*, 479 Mich at 458. Yet the flexibility afforded by MCL 600.2912d(1) is not without limits. "[P]laintiff's counsel must invariably have a *reasonable belief* that the expert satisfies the requirements of MCL 600.2169." *Id*. In determining the reasonableness of counsel's belief, courts consider the information available to counsel at the time the AOM was prepared, including publicly available information, *Grossman*, 470 Mich at 599-600, and relevant statutes and caselaw, *Bates*, 479 Mich at 461.

Despite my disagreement with Crego's reading of the above-quoted language from *Woodard*, it is accepted by the majority and appears reasonable. Moreover, *Robins*, although decided under MCL 600.2169(1)(c), is published authority supporting the propriety of an osteopathic physician furnishing an AOM against an allopathic physician. The circuit court was correct that *Bates*, *McElhaney*, and *Brown* are well-established, but none of them involved physicians as defendants. In fact, this question appears to be one of first impression even though the statute has been in existence since 1993. Given these circumstances and the underlying facts, I would conclude that Crego's counsel could have reasonably believed his proposed expert satisfied the requirements of MCL 600.2169 and the AOM was proper.

For this reason, I agree that the circuit court's order of dismissal must be reversed and the case remanded for further proceedings.


/s/ Anica Letica