*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RYAN LEIBINGER,

      Plaintiff-Appellant,

v

METROPOLITAN HEALTH CORPORATION,
doing business as METRO HEALTH, SARA L.
KOSTER, N.P., and CERTIFIED EMERGENCY
MEDICINE SPECIALISTS, PC,

      Defendants-Appellees.

UNPUBLISHED
November 21, 2023

No. 361939
Kent Circuit Court
LC No. 2021-006014-NH

Before: MURRAY, P.J., and CAMERON and PATEL, JJ.

PER CURIAM.

Plaintiff, Ryan Leibinger, appeals as of right the orders granting defendants' motions for summary disposition under MCR 2.116(C)(10). According to plaintiff, the trial court wrongly determined plaintiff failed to show the existence of an ostensible agency relationship. He further argues that his proposed expert witness—a nurse practitioner specializing in wound care—was not disqualified under MCL 600.2169(1)(b)(*i*). We agree. Therefore, we reverse the trial court's orders granting defendants' respective motions for summary disposition and remand to the trial court for further proceedings consistent with this opinion.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

In July 2019, plaintiff went to the Metro Health Urgent Care, a subsidiary of Metropolitan Health Corporation (Metro Health), complaining of an injury on his right heel. He was seen by defendant, Sara L. Koster. Koster, a nurse practitioner, was an independent contractor employed by Certified Emergency Medicine Specialists, PC (CEMS). Plaintiff and Koster had no preexisting medical relationship. Koster diagnosed plaintiff with a blood blister and treated him accordingly. Over time, plaintiff's condition worsened, and he eventually required orthopedic surgery.

-1-

Plaintiff filed a medical malpractice action, alleging that Koster failed to appropriately treat the injury on his heel. Plaintiff claimed that CEMS and Metro Health were vicariously liable for Koster's actions. Plaintiff's proposed standard-of-care expert filed an affidavit of merit in support of his claim. Metro Health moved for summary disposition under MCR 2.116(C)(10), arguing that Koster was not its employee and that it could not be held liable under an ostensible agency theory. Koster and CEMS (collectively, "the CEMS defendants") likewise moved for summary disposition, contending that plaintiff's standard-of-care expert was not qualified to provide expert testimony under MCL 600.2169. The trial court granted both motions for summary disposition. This appeal followed.

## II. STANDARDS OF REVIEW

This Court reviews de novo a trial court's ruling on a motion for summary disposition made under MCR 2.116(C)(10). *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A (C)(10) motion for summary disposition tests the factual sufficiency of a complaint. *Id*. at 120.

> In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Id*. (citations omitted).]

Under the burden-shifting framework of this rule, "the moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence. The burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996) (citations omitted). The nonmoving party "must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Id*.

This case also involves the interpretation of statutes and contractual language, which are reviewed de novo. *Henry Ford Health Sys v Everest Nat'l Ins Co*, 326 Mich App 398, 402; 927 NW2d 717 (2018).

> Whether construing statutes or contracts, courts look to the language used and the context for the purpose sought to be achieved. In interpreting a statute, a court is guided by legislative intent; in construing a contract, it looks for the intent of the parties. Courts are not less constrained in construing statutory terms than they are in construing terms agreed to by contracting parties. [*In re Certified Question*, 413 Mich 22, 32 n 5; 319 NW2d 320 (1982).]

III.  OSTENSIBLE AGENCY

Plaintiff argues that the trial court erred when it granted Metro Health summary disposition because there was a factual question whether an ostensible agency relationship existed between Koster and Metro Health.  We agree.[1]

Generally, under Michigan law, a defendant is only liable for his own acts of negligence. *Laster v Henry Ford Health Sys*, 316 Mich App 726, 734; 892 NW2d 442 (2016).  An exception to this rule exists under the theory of respondeat superior, in which "an employer may be liable for the negligent acts of its employee if the employee was acting within the scope of his employment." *Id*.  "A hospital may be 1) directly liable for malpractice . . . or 2) vicariously liable for the negligence of its agents."  *Cox v Bd of Hosp Managers for City of Flint*, 467 Mich 1, 11; 651 NW2d 356 (2002).

This case involves a nurse practitioner working as an independent contractor of a hospital system.  Generally, "a hospital is not vicariously liable for the negligence of a physician who is an independent contractor and merely uses the hospital's facilities to render treatment to his patients." *Grewe v Mt Clemens Gen Hosp*, 404 Mich 240, 250; 273 NW2d 429 (1978).  But, the ostensible agency theory holds that a hospital may be liable if the patient "looked to the hospital to provide him with medical treatment and there has been a representation by the hospital that medical treatment would be afforded by physicians working therein . . . ."  *Id*. at 250-251.

In Michigan, whether there is ostensible agency is a three-factor test:

(1) the person dealing with the agent must do so with belief in the agent's authority and this belief must be a reasonable one, (2) the belief must be generated by some act or neglect on the part of the principal sought to be charged, and (3) the person relying on the agent's authority must not be guilty of negligence. [*Chapa v Mary's Hosp of Saginaw*, 192 Mich App 29, 33-34; 480 NW2d 590 (1991) (citations omitted).]

The "critical question" identified by *Grewe*, 404 Mich at 251, is:

whether the plaintiff, at the time of his admission to the hospital, was looking to the hospital for treatment of his physical ailments or merely viewed the hospital as the situs where his physician would treat him for his problems.  A relevant factor in this determination involves resolution of the question of whether the hospital provided the plaintiff with [the doctor] or whether the plaintiff and [the doctor] had a patient-physician relationship independent of the hospital setting.

Metro Health moved for summary disposition, arguing that it was not liable under an ostensible agency theory.  Specifically, Metro Health asserted it "expressly informed [Plaintiff] that independent contractors provided care at Metro Health."  Plaintiff responded, arguing that he

---

[1] The parties do not dispute that Koster was not an employee of Metro Health.

reasonably believed Koster was an employee of Metro Health. In support of this position, plaintiff attached deposition testimony which demonstrated Koster wore scrubs and a name badge bearing Metro Health's name and logo. But, according to Metro Health, it adequately dispelled any reasonable belief by plaintiff that a Metro Health employee provided his care. Metro Health pointed to the consent form signed by plaintiff prior to his treatment. This form stated, in relevant part:

> 5. AGREEMENT TO PAY FOR SERVICES, ASSIGNMENT OF RIGHTS AND INSURANCE BENEFITS. With my admission and consent to Metro Health for the delivery of medical treatment and services. I acknowledge that I may owe Metro Health for a portion or all of the cost of the medical treatment and services. I allow my insurance company (or any insurance company responsible for paying my medical bills) to pay Metro Health. I know that other providers may render/provide services to me while I am a patient and bill me separately. I allow assignment of benefits to those providers, which may include Radiologists, Anesthesiologists and Emergency Doctors who are specialists acting as independent contractors at Metro Health. After settlement through my insurance company (if applicable) and any other reimbursement/payment sources, I agree that Metro Health and any entity that Metro Health authorizes to seek, obtain, manage or collect for the treatment and services Metro Health provides to me. In connection with those efforts, my consumer report may be obtained.

A trial court must view the facts in a light most favorable to the nonmoving party. *Maiden*, 461 Mich at 120. Viewing the contractual language through this lens establishes that plaintiff was on notice that independent contractors may provide medical care. However, the contract goes on to state that the care provided by independent contractors is limited to "Radiologists, Anesthesiologists and Emergency Doctors." The explicit mention of one thing implies the exclusion of another. See *Wayne Co v Wayne Co Retirement Comm*, 267 Mich App 230, 248; 704 NW2d 117 (2005) (explaining the canon of construction, *expressio unius est exclusio alterius*). Here, the contract expressly identifies several types of *physicians* who may provide treatment as independent contractors. The contract does not, however, extend this notice to any nonphysicians. Because Koster was a nurse practitioner and not a physician, this contractual provision did not adequately notify plaintiff that non-physicians like Koster could be independent contractors.

Summary disposition was inappropriate because plaintiff's evidence demonstrated his reasonable belief that Koster was a Metro Health employee, and Metro Health failed to present evidence showing it dispelled this belief. We therefore reverse the trial court's order granting summary disposition in Metro Health's favor and remand this issue to the trial court for further proceedings.

## IV. EXPERT WITNESS

Plaintiff next contends that the trial court erred when it determined his expert witness was not qualified under MCL 600.2169(1). We agree.

A medical malpractice claim may be brought against any licensed health care professional. MCL 600.2912; MCL 600.5838a(1); *Bryant v Oakpointe Villa Nursing Ctr*, 471 Mich 411, 422;

684 NW2d 864 (2004). Nurse practitioners are licensed health care professionals under the Public Health Code, MCL 333.16101 *et seq.* MCL 333.17210(1)(c). Four elements must be established to sustain a medical malpractice claim:

> (1) the appropriate standard of care governing the defendant's conduct at the time of the purported negligence, (2) that the defendant breached that standard of care, (3) that the plaintiff was injured, and (4) that the plaintiff's injuries were the proximate result of the defendant's breach of the applicable standard of care. [*Kalaj v Khan*, 295 Mich App 420, 429; 820 NW2d 223 (2012).]

Expert testimony is necessary in a medical malpractice action to establish the applicable standard of care and the defendant's breach of that standard. *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016). The proponent of the expert testimony in a medical malpractice action must establish that the expert is qualified under MCL 600.2169(1). MCL 600.2169(1) states:

> In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:

> (a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.

> (b) Subject to subdivision (c), during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:

> (*i*) The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, the active clinical practice of that specialty.

> (*ii*) The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.

> (c) If the party against whom or on whose behalf the testimony is offered is a general practitioner, the expert witness, during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:

> (*i*) Active clinical practice as a general practitioner.

(*ii*) Instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed.

The CEMS defendants moved for summary disposition alleging there was no genuine question of fact that plaintiff's proposed expert was not qualified to testify as an expert witness in this case. In granting their motion for summary disposition, the trial court reasoned:

Koster was practicing as a Family Nurse Practitioner, and [the proposed expert,] a Certified Wound Care Specialist. Wound care is a specialty. Specialists do not need to be a Nurse Practitioner to become board certified, although they do have to have certain credentials and wound care experience. [The proposed expert] spent her professional time as a Certified Wound Care Specialist, and the Court finds she does not qualify under MCL [600.2169(1)(b)].[2] [Footnote added.]

A threshold question in this case is the meaning of the phrase "if that party is a specialist, the active clinical practice of that specialty." MCL 600.2169(1)(b)(*i*). Specifically, whether the proposed expert, who was a nurse practitioner specializing in wound care, qualified as a "specialist" under MCL 600.2169(1)(b)(*i*). In similar circumstances, we have concluded that the term "specialist" includes physicians, but not other health care professionals.

For example, in *McElhaney ex rel McElhaney v Harper-Hutzel Hosp*, 269 Mich App 488, 493-494; 711 NW2d 795 (2006), this Court considered whether a nurse midwife could be considered a "specialist" under MCL 600.2169(1)(a). We relied on the dictionary to define the term "specialist" to mean "a medical practitioner who deals only with a particular class of diseases, conditions, patients, etc." *Id*. at 494 n 4; quoting *Random House College Dictionary* (1995). We noted that a "physician" is statutorily defined as "an individual licensed under this article to engage in the practice of medicine." *McElhaney*, 269 Mich App at 494 n 4; quoting MCL 333.17001(1)(c) as amended by 2018 PA 524 and 2018 PA 624.[3] And, the practice of medicine is defined as "the diagnosis, treatment, prevention, cure, or relieving of a human disease, ailment, defect, complaint, or other physical or mental condition, by attendance, advice, device, diagnostic test, or other means, or offering, undertaking, attempting to do, or holding oneself out as able to do, any of these acts." *McElhaney*, 269 Mich App at 494 n 4; quoting MCL 333.17001(1)(d) as amended by 2018 PA 524 and 2018 PA 624.[4]

We noted that "[n]urse midwives are registered professional nurses with specialty certification in the practice of nurse midwifery issued by the Board of Nursing." *McElhaney*, 269 Mich App at 494 n 4; citing MCL 333.17210 and MCL 333.2701. But under the plain and ordinary terms of the statute, only physicians practice medicine, while nurse midwives practice nursing.

---

[2] The trial court incorrectly cited the applicable statute as "MCL 600.2619(1)(b)."

[3] The term "physician" is now cited at MCL 333.17001(1)(f).

[4] The term "practice of medicine" is now cited at MCL 333.17001(1)(j).

*McElhaney*, 269 Mich App at 494 n 4. Accordingly, the term "specialist" under MCL 600.2169(1)(a) does not include nurse midwives.

It is a common tenant of statutory interpretation that words and phrases are to be read harmoniously across statutory schemes. *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009) (A "statute must be interpreted in a manner that ensures that it works in harmony with the entire statutory scheme."). Thus, the definition of the term "specialist" should be applied under subsection (1)(b) in the same manner as it is under subsection (1)(a). As noted above, a specialist is a "medical practitioner who deals only with a particular class of diseases, conditions, patients, etc." *McElhaney*, 269 Mich App at 494 n 4. A physician is presently defined as "an individual who is licensed or authorized under this article to engage in the practice of medicine." MCL 333.17001(1)(f).[5] By contrast, certified nurse practitioners are registered professional nurses with "advanced training beyond that required for initial licensure . . . ." MCL 333.17210(1). Put simply, physicians practice medicine and nurse practitioners practice nursing. Because the term "specialist" only applies to individuals who practice medicine, the term cannot be applied to nurse practitioners. We therefore hold that, under MCL 600.2169(1)(b)(*i*), the phrase "if that party is a specialist, the active clinical practice of that specialty" does not apply to nurse practitioners because nurse practitioners are not "specialists" as defined by the statute.

The trial court granted summary disposition to the CEMS defendants because plaintiff's proposed expert specialized in wound care and not general-practice medicine. But, given our analysis above, the specialist requirement of MCL 600.2169(1)(b)(*i*) does not apply to nurse practitioners. Thus, to be qualified as a nurse practitioner expert witness under MCL 600.2169(1)(b)(*i*), the plaintiff need only show that the proposed witness engaged in "[t]he active clinical practice of the *same health profession* in which the party against whom or on whose behalf the testimony is offered is licensed." (Emphasis added.) Here, both Koster and the proposed expert were nurse practitioners engaged in the active clinical practice of nursing. Consequently, the trial court erred when it concluded the proposed expert was not qualified under MCL 600.2169(1)(b)(*i*).

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Thomas C. Cameron
/s/ Sima G. Patel

---

[5] This is slightly different from the definition set forth in *McElhaney*, which omitted the phrase "or authorized." *McElhaney*, 269 Mich App at 494 n 4.