*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DALE GERALD GLINIECKI,

Plaintiff-Appellee,

v

ASCENSION ST. JOHN HOSPITAL, ST. JOHN
PROVIDENCE, doing business as ST. JOHN
HOSPITAL AND MEDICAL CENTER,
CARDIOVASCULAR INSTITUTE OF
MICHIGAN, PC, and ALI HUSSAIN SHAKIR,

Defendants-Appellants.

UNPUBLISHED
May 26, 2022

No. 356543
Wayne Circuit Court
LC No. 19-001388-NH

Before: LETICA, P.J., and MARKEY and O'BRIEN, JJ.

PER CURIAM.

In this medical malpractice action, defendants appeal by leave granted[1] the trial court's orders denying their motions for summary disposition. We affirm in part and reverse and remand in part.

This medical malpractice lawsuit arose from a cardiac-flutter-ablation procedure that defendant, Dr. Ali Hussain Shakir, a board-certified clinical cardiac electrophysiologist (CCE), performed on plaintiff. In a multicount complaint alleging direct and vicarious claims of liability, plaintiff alleged that malpractice occurred before, during, and after the ablation procedure. Plaintiff asserted that negligent acts and omissions were committed by Dr. Shakir, attending registered nurses (RNs) or "nursing staff," and other agents, employees, and contractors of the entity defendants. In relation to the complaint, plaintiff attached or included affidavits of merit (AOMs) executed by Dr. Paul LeLorier, a CCE, Dr. Robert Lee, a board-certified general and vascular surgeon, and Holly Sworst, an RN. Sworst was *not* a nurse practitioner (NP). Plaintiff

---

[1] *Gliniecki v Ascension St John Hosp*, unpublished order of the Court of Appeals, entered July 6, 2021 (Docket No. 356543).

did not file an AOM of an NP. The complaint did not identify by name any particular RN, nor did the complaint specifically allege negligence by an NP.[2] In his brief on appeal, plaintiff claims that Linda Mannino and Sabina Singh were negligent in caring for and treating plaintiff. Mannino and Singh were NPs as well as RNs. For purposes of the litigation going forward, plaintiff, with respect to the standard of care and its breach, relies on the testimony of Donald Bucher and Barbara McLean. Like Mannino and Singh, Bucher and McLean were dually licensed or certified as RNs and NPs.

Defendants filed two motions for summary disposition under MCR 2.116(C)(10). One of the motions concerned plaintiff's claims against Dr. Shakir and the other the claims involving the RNs or nursing staff. With respect to Dr. Shakir, defendants maintained that Dr. LeLorier's testimony was unreliable and contrary to the facts in evidence because his theory on how Dr. Shakir breached the standard of care was wholly undermined when Dr. Shakir clarified and elaborated on the procedure used in performing the cardiac ablation. In regard to the RNs, defendants argued that plaintiff's proffered experts, Bucher and McLean, were not qualified to offer standard-of-care testimony in connection with Mannino, Singh, and any other nurses encompassed by the complaint. Defendants contended that Bucher and McLean had devoted a majority of their professional time to the practice or instruction of nurse practitionership during the year immediately preceding the cardiac ablation. But, according to defendants, Mannino and Singh were working as RNs and not NPs when providing care for plaintiff at the time of the ablation procedure. The trial court disagreed with defendants' arguments and denied both motions for summary disposition. Defendants filed an application for leave to appeal, and this Court granted leave.

We review de novo a trial court's ruling on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019).[3]

---

[2] Plaintiff alleged malpractice by nurses and nursing staff but not by any nurse *practitioners*.

[3] MCR 2.116(C)(10) provides that summary disposition is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A motion brought pursuant to MCR 2.116(C)(10) tests the factual support for a party's action. *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). "Affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in the motion are required . . . when judgment is sought based on subrule (C)(10)," MCR 2.116(G)(3)(b), and such evidence, along with the pleadings, must be considered by the court when ruling on the (C)(10) motion, MCR 2.116(G)(5). "When a motion under subrule (C)(10) is made and supported . . ., an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4).

"A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to

In *Estate of Horn v Swofford*, 334 Mich App 281, 287-288; 964 NW2d 904 (2020), this Court set forth standards of review that are pertinent to the instant appeal:

> This case turns on the interpretation of MCL 600.2169, and "[t]he construction of MCL 600.2169 presents a question of law subject to de novo review." *Crego v Edward W Sparrow Hosp Ass'n*, 327 Mich App 525, 531; 937 NW2d 380 (2019); see also *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006). We review for an abuse of discretion a trial court's decision concerning the qualifications of a proposed expert witness to testify. *Crego*, 327 Mich App at 531. When a trial court's decision falls outside the range of principled and reasonable outcomes, the court abuses its discretion. *Id*. A court necessarily abuses its discretion when a particular ruling constitutes an error of law. *Id*.

"The plaintiff in a medical malpractice action bears the burden of proving: (1) the applicable standard of care, (2) breach of that standard by defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury." *Cox v Flint Bd of Hosp Managers*, 467 Mich 1, 10; 651 NW2d 356 (2002) (quotation marks and citation omitted); see also *Estate of Horn*, 334 Mich App at 288. "Failure to establish any one of these four elements is fatal to a plaintiff's medical malpractice suit." *Estate of Horn*, 334 Mich App at 288 (citation omitted). In *Cudnik v William Beaumont Hosp*, 207 Mich App 378, 382; 525 NW2d 891 (1994), this Court noted that the "standard of care is founded upon how other doctors in that field of medicine would act and not how any particular doctor would act." (Quotation marks and citation omitted.) "Generally, expert testimony is required in a malpractice case in order to establish the applicable standard of care and to demonstrate that the professional breached that standard." *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016) (quotation marks and citation omitted).

MCL 600.2912d(1) requires a medical malpractice plaintiff to "file with the complaint an affidavit of merit signed by a health professional who the plaintiff's attorney reasonably believes

---

the nonmovant, show that there is no genuine issue with respect to any material fact." *Pioneer State*, 301 Mich App at 377. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). *Pioneer State*, 301 Mich App at 377. "Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994). "[S]peculation is insufficient to create an issue of fact." *MEEMIC Ins Co v DTE Energy Co*, 292 Mich App 278, 282; 807 NW2d 407 (2011). A court may only consider substantively admissible evidence actually proffered by the parties when ruling on the motion. *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999); see also MCR 2.116(G)(6).

meets the requirements for an expert witness under section 2169." MCL 600.2169 provides, in pertinent part:

> (1) In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:
>
> * * *
>
> (b) Subject to subdivision (c) [inapplicable], during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:
>
> (*i*) The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, the active clinical practice of that specialty.
>
> (*ii*) The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.

MCL 600.2169(1)(b) applies "generally to all malpractice actions, including those initiated against nonphysicians." *McElhaney v Harper-Hutzel Hosp*, 269 Mich App 488, 494; 711 NW2d 795 (2006). "MCL 600.2169(1)(a), which refers to specialists, does not apply to nurses, . . . but MCL 600.2169(1)(b) does, because it applies to all health professionals." *Jones v Botsford Continuing Care Corp*, 310 Mich App 192, 198; 871 NW2d 15 (2015) (citation omitted).

In this case, defendants argue that the trial court erred by denying their motion for summary disposition with respect to the claims against the RNs because an NP cannot offer standard-of-care testimony in regard to RNs. And, according to defendants, plaintiff had not advanced any claims against an NP, having failed to submit an AOM from an NP. Defendants contend that neither Bucher nor McLean—plaintiff's experts—can provide testimony regarding the standard of care concerning the RNs because the experts spent a majority of their professional time in the year before the alleged malpractice working as NPs or teaching in that field.

We start our analysis of this issue by examining plaintiff's complaint and the AOMs attached to the complaint. The complaint alleged negligence or malpractice by nurses, RNs, and nursing staff, along with other agents, employees, and contractors. Plaintiff's complaint did not mention the specific name of any of the individuals who fit into these job-related categories; no RN or NP was named as a defendant in the lawsuit, nor was any RN or NP identified by name in the extensive complaint. Moreover, at no point in the complaint did plaintiff expressly allege malpractice by a "nurse practitioner." Plaintiff filed the complaint in January 2019. More than a year earlier, this Court issued its opinion in *Cox v Hartman*, 322 Mich App 292; 911 NW2d 219 (2017). In *Cox*, this Court held that "[t]he health profession of a nurse and the health profession

of a nurse practitioner are different, as reflected in the fact that the former is practiced pursuant to a license while the latter is practiced pursuant to a registration or specialty certification." *Id.* at 305. Accordingly, under MCL 600.2912d(1) and MCL 600.2169(1), if an NP is alleged to have committed malpractice, the plaintiff must file a supporting AOM executed by an NP. In this case, plaintiff did not file an AOM by an NP. Given the allegations in the complaint, which never alleged negligence by a "nurse practitioner," and the absence of an AOM from an NP, we conclude that plaintiff failed to allege negligence or malpractice by an NP. Our ruling does not entail a challenge of the AOMs plaintiff filed. See MCR 2.112(L)(2)(b) (setting a time limit to challenge an AOM).[4] We accept the AOMs as filed and simply conclude that they, in conjunction with the allegations in the complaint, demonstrate that plaintiff failed to allege a claim of negligence by an NP.

In light of our ruling, plaintiff's allegations concerning Mannino and Singh or any nurse, in order to succeed, had to pertain to their actions as RNs, and we shall proceed with our analysis on the assumption that they were acting as RNs when providing treatment to plaintiff.[5] For plaintiff to establish the standard of care and breach of that standard at trial, plaintiff would need to submit evidence from an RN—with a pertinent one-year history before the ablation—regarding the purported standard and breach. See MCL 600.2169(1). This Court's ruling in *Cox*, 322 Mich App 292, demands such an analysis. In *Cox*, the plaintiff alleged, in relevant part, that an RN committed malpractice in relation to the birth of the plaintiff's daughter. *Id.* at 296. The defendants in *Cox* accurately contended that the plaintiff's expert, in the year immediately preceding the birth, had devoted the majority of her professional time to instructing university students in an NP graduate program. *Id.* at 297-298. After reviewing MCL 600.2169(1) and state licensing and certification schemes regarding RNs and NPs, this Court held:

> Because [the plaintiff's expert] did not spend the majority of her professional time in the year preceding the alleged malpractice practicing or teaching the health profession of a nurse, as opposed to the health profession of a nurse practitioner, she did not satisfy the statutory criteria to testify concerning the standard of care applicable to . . . a registered nurse. [The expert's] testimony was therefore properly excluded. [*Cox*, 322 Mich App at 305.]

The *Cox* panel rejected various arguments posed by the plaintiff, including the plaintiff's contention that *Sturgis Bank & Trust Co v Hillsdale Community Health Ctr*, 268 Mich App 484; 708 NW2d 453 (2005), dictated a different outcome. *Cox*, 322 Mich App at 308-310.

*Cox* is controlling precedent and governs in our case. Plaintiff's arguments to the contrary were essentially rejected in *Cox*, including plaintiff's reliance on *Sturgis Bank.* The question thus

---

[4] Had plaintiff identified an NP in the complaint or referenced the health profession of "nurse practitioner," then one could reasonably argue that the AOMs had to be timely challenged in accord with MCR 2.112(L)(2)(b). The allegations of negligence by the "nursing staff" did not encompass NPs.

[5] Of course, if Mannino and Singh were acting as NPs when providing care, we would conclude that no cause of action was alleged against them as NPs.

becomes whether Bucher or McLean, who, again, were both NPs and RNs, devoted a majority of his or her time in the active clinical practice of nursing or in the instruction of students in the nursing field during the year immediately preceding the date of the alleged negligence. The record does not establish that either Bucher or McLean did so. Bucher's deposition testimony revealed that during the year immediately preceding the date of the alleged malpractice, he devoted a majority of his professional time instructing students in an NP program. And with respect to McLean, plaintiff simply failed to provide any evidence reflecting that she devoted a majority of her time in the active clinical practice of nursing or instructing students in the nursing field during the year immediately preceding the date of the alleged negligence. Because neither Bucher nor McLean can testify regarding the standard of care applicable to RNs, as a matter of law, plaintiff cannot establish all of the requisite elements of a medical malpractice claim. See *Cox*, 467 Mich at 10; *Estate of Horn*, 334 Mich App at 288. Accordingly, the trial court erred by denying the motion for summary disposition relative to the alleged negligence of any RNs.[6]

With respect to the alleged malpractice of Dr. Shakir, defendants argue that Dr. LeLorier's testimony was premised on an assumption of facts not supported by the evidence. Defendants contend that Dr. LeLorier's testimony was contrary to the facts in the record, so it could not establish a genuine issue of material fact on the standard of care and breach of the standard of care. We conclude that this argument is generally unavailing because it focuses on only one of several alleged negligent acts or omissions asserted as to Dr. Shakir's conduct. But we do hold that partial summary disposition in favor of defendants is appropriate in regard to one particular alleged breach of the standard of care.

Dr. Shakir acknowledged that in performing the cardiac flutter ablation he punctured plaintiff's femoral artery when gaining venous access and that the puncture caused an arteriovenous (AV) fistula. Dr. LeLorier opined that Dr. Shakir's improper care and treatment caused plaintiff's AV fistula and a pseudoaneurysm. According to Dr. LeLorier, had Dr. Shakir used fluoroscopy to gain venous access during the ablation procedure, he would have been in conformity with the standard of care. But Dr. LeLorier suspected that Dr. Shakir had not used fluoroscopy to gain venous access: The surgical notes would have documented its use, and they did not indicate that Dr. Shakir used fluoroscopy in that manner.[7] Dr. Shakir, however, then submitted an uncontradicted affidavit in which he averred that he had used fluoroscopy to gain venous access during the ablation procedure. For this reason, defendants maintain that plaintiff cannot factually establish breach of the standard of care as necessary to succeed on a claim of medical malpractice, see *Cox*, 467 Mich at 10; *Estate of Horn*, 334 Mich App at 288, thereby entitling defendants to summary dismissal of the claims involving Dr. Shakir.

---

[6] To the extent that plaintiff is arguing that his attorney had a reasonable belief that Bucher and McLean were qualified to give standard-of-care testimony regarding RNs, we find that the reasonable-belief standard applies to AOMs, MCL 600.2912d(1), not trial testimony, MCL 600.2169(1). Moreover, in light of *Cox*, no such belief would be reasonable.

[7] The medical records reflected that Dr. Shakir had used fluoroscopy, but they failed to show how he used fluoroscopy—to gain venous access or to insert the catheter.

Although we agree that defendants are correct in relation to the standard of care *with respect to using fluoroscopy for gaining venous access*, we conclude that defendants' argument effectively ignores the additional alleged breaches of the standard of care. In his deposition, Dr. LeLorier testified that Dr. Shakir breached the standard of care by using a modified micropuncture technique in performing the ablation, failing to properly locate the access stick so as not to be too low, failing to avoid cannulating the superficial femoral artery (causing the catheter to go through-and-through the femoral artery into the vein), failing to recognize said cannulation, failing to auscultate the groin or examine pulses post-procedure, and failing to timely diagnose a pseudoaneurysm or AV fistula post-procedure. Dr. LeLorier noted that part of the malpractice Dr. Shakir committed was "the failure to recognize there was a complication" and to proceed accordingly. Dr. LeLorier stated that had the AV fistula been diagnosed, "that would have led to an ultrasound which would have diagnosed the pseudoaneurysm." Accordingly, because there was more than one alleged breach of the standard of care, defendants' argument does not justify granting a motion for summary disposition that disposes of the *entire* case in regard to Dr. Shakir. Therefore, the trial court did not err by denying the motion for summary disposition in relation to Dr. Shakir's alleged malpractice, except with respect to the alleged breach that Dr. Shakir failed to use fluoroscopy to gain venous access. On that matter, defendants are entitled to an order granting partial summary disposition.

Finally, as an alternative argument to the one that we just addressed and rejected, defendants contend that Dr. LeLorier's opinion testimony was inadmissible under MRE 702 and the factors set forth in MCL 600.2955 because it was not sufficiently reliable. This argument simply presents a different legal basis for excluding or not considering Dr. LeLorier's testimony that Dr. Shakir breached the duty of care by not using fluoroscopy to gain venous access during the ablation procedure. We have now summarily dismissed the fluoroscopy-based claim, and defendants' argument regarding reliability under MRE 702 and MCL 600.2955(1) does not encompass Dr. LeLorier's opinions on the other alleged breaches of the standard of care. Thus, with the one exception, defendants are not entitled to wholesale summary dismissal of the medical malpractice action predicated on Dr. Shakir's alleged negligence.

We affirm in part and reverse and remand in part for further proceedings consistent with this opinion. We do not retain jurisdiction. We decline to award taxable costs under MCR 7.219.

/s/ Anica Letica
/s/ Jane E. Markey
/s/ Colleen A. O'Brien